520 A.2d 895

First National Bank of Fredericksburg, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

338

Argued September 10, 1986, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Frank A. Sinon*, with him, *Sherill T. Moyer* and *Jack F. Hurley, Jr., Rhoads & Sinon;* Of Counsel: *Calvin D. Spitler, Spitler & Kilgore,* for petitioner.

*George T. Bell,* Chief Counsel, with him, *Steven R. Marcuse* and *William E. Kellogg,* Assistant Counsels, for respondent.

*John J. Brennan,* with him, *Gordon W. Gerber* and *Kathleen M. McCarthy, Dechert, Price & Rhoads,* and *P. J. DiQuinzio,* for Amicus Curiae, Pennsylvania Bankers Association.

*Harry J. Rubin,* with him, *Donald D. Geyer, Krekstein, Rubin and Lasday,* for Amicus Curiae, Keystone National Bank.

OPINION BY JUDGE CRAIG, January 27, 1987:

The First National Bank of Fredericksburg appeals an order of the Board of Finance and Revenue which refused the bank's petition for review of Resettlement of Single Excise Tax for the year ended 1983, as settled by the Department of Revenue and approved by the Department of Auditor General.

This case, and the statute which the bank here challenges, arose as a result of the Pennsylvania Supreme Court's decision in *Dale National Bank v. Commonwealth of Pennsylvania,* 502 Pa. 170, 465 A.2d 965 (1983). In that case, the Supreme Court held, in accordance with the United States Supreme Court's decision in *American Bank and Trust Co. v. Dallas County,* 463 U.S. 855 (1983), that, when the Commonwealth is computing the amount of bank shares tax which a taxpayer bank owes, it may not, under 31 U.S.C. §742,[1] consider obligations of the United States owned by the bank.

As in *American Bank and Trust Co.,* the court in *Dale National Bank* concluded that the bank shares tax imposed on the taxpayer bank was invalid because the amount was computed on the basis of equity capital, which in turn was determined, in part, by United States obligations. "Congress intended . . . to invalidate all taxes measured directly or indirectly by the value of

---

[1] That section provided:

All stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other non-property taxes in lieu thereof imposed on corporations and except estate taxes and inheritance taxes.

*See* 31 U.S.C. §3124(a).

federal obligations, except those specified in [section 742]." *Dale National Bank,* 502 Pa. at 175, 465 A.2d at 968 *(quoting American Bank and Trust Co.,* 463 U.S. at 867).

Under Article XIII of the Tax Reform Code of 1971, entitled "A Single Excise Tax on Certain Banks, Title Insurance Companies, Bank and Trust Companies and Trust Companies," as amended in 1983,[2] the express purpose of the single excise tax is

> to provide revenues to the Commonwealth to match the anticipated revenues under Articles VII and VIII, as formerly in effect, which may be lost by reason of, or arising out of or support-ed by the interpretation of the provisions of such articles as construed by, the decision of the Supreme Court of Pennsylvania in Dale National Bank v. Commonwealth, 502 Pa. 170, 465 A.2d 965 (1983), and if for any reason no such reve-nues shall be lost, the tax imposed by this article shall be abated.

72 P.S. §8305.

According to the Stipulations of Fact entered into by the parties, the department settled bank shares taxes against the bank which the bank paid for the tax years 1978 through 1983, inclusive. On August 30, 1983, the bank filed petitions for refund of shares taxes for those dates because, in determining the tax owed by the bank, the department had considered the value of the bank's United States securities in violation of 31 U.S.C. §742. On February 1, 1984, the bank timely filed a "Report of Banks Shares Tax Refunds Claimed or to be Claimed Pursuant to Act No. 66 of 1983," and later timely filed a Single Excise Tax Report for 1983. Ac-

---

[2] Section 7 of the Act of December 1, 1983, P.L. 228, 72 P.S. §§8301-8309.

cording to the petitions and report filed by the bank, the total refund sought by the bank for the years 1978 through 1983 was $155,807.32.[3] On May 1, 1984, the department settled the bank's Single Excise Tax at $155,807.28, which the Department of the Auditor General then audited and approved. The department mailed a copy of the settlement to the bank on May 11, 1984.

On May 30, 1984, the board granted the bank's Petitions for Refund for the Years 1978 through 1983, thereby resettling the amount of shares taxes owed by the bank for those years at "NONE." That resettlement resulted in a reduction of the bank's shares tax liability for those six tax years of $155,807.28.

In March of 1984, the department sent to the bank a form entitled "Request and Authorization for Transfer of Shares Tax Refunds and Credits," which, if completed by the bank, would authorize the department "to transfer any refund or credit of shares tax, granted to the above named taxpayer as a result of the decision of the Pennsylvania Supreme Court in Dale National Bank v. Commonwealth, . . . to satisfy the Single Excise Tax liability of such taxpayer imposed by Article VIII of the Tax Reform Code of 1971, added by the Act of December 1, 1983 (No. 66, P.L. 228)." The form further pro-

---

[3] According to paragraph No. 4 of the parties' Stipulation of Fact, the year-by-year refund sought by the bank was as follows:

| Tax Date | Tax |
|---|---|
| 1/1/78 | $ 17,945.90 |
| 1/1/79 | 18,184.84 |
| 1/1/80 | 26,014.38 |
| 1/1/81 | 27,080.66 |
| 1/1/82 | 28,547.13 |
| 1/1/83 | 38,034.41 |
| | $155,807.32 |

vided that the Department of Revenue would take no further action to compel payment of the Single Excise Tax if the refunds and credits claimed by the taxpayer under *Dale National Bank* fully satisfied the taxpayer's Single Excise Tax liability and the taxpayer had in fact transferred the refunds and credits due him in accordance with this authorization form. However, the bank did not execute the form or otherwise request that the department apply the bank's shares tax credits to its single excise tax liability.

The bank had timely filed a petition for resettlement of the Single Excise Tax with the Board of Appeals. However, the board denied that petition by an order dated September 5, 1984. The bank then timely filed a petition for review from that order with the Board of Finance and Revenue. The board denied the petition by an order dated January 30, 1985.

Although the bank had not executed the department's "Request and Authorization for Transfer of Shares Tax Refunds and Credits," by letter dated November 29, 1984, the department advised the bank that the "Department has applied Act 66 of 1983 . . . ." and an Account Review showing a Single Excise Tax debit of $155,807.32, Shares Tax Credits for the 1978 through 1983 tax base of $155,807.32 and a balance of "$0.00."

Consistent with those actions by the department against the bank, the Stipulations of Fact provide:

8. If Taxpayer had not claimed refunds of Shares Tax as set forth in Paragraph 4 hereof, Taxpayer's single excise tax would have been settled at $-0-.

9. Taxpayers which did not claim Shares Tax Refunds and Taxpayers which withdrew their claims for refunds after the passage of Act 66 had their Single Excise Taxes settled at $-0-.

## Due Process

The bank first contends that the department's application of the Single Excise Tax deprives the bank of a vested legal right and is thereby inconsistent with the due process clauses of the Fourteenth Amendment to the United States Constitution and art. I, §9 of the Pennsylvania Constitution.

In *Dale National Bank,* the Supreme Court established that a petition for refund is a cause of action which the legislature may not extinguish after it has accrued to a claimant. 502 Pa. at 177-78 n.3, 465 A.2d at 969 n.3. Act 317 of 1982,[4] sought to tax, for the privilege of doing business in this Commonwealth, the actual value of capital stock paid in, surplus, and undivided profits, in an attempt to create a tax which fell within the exception to 31 U.S.C. §742 for "nondiscriminatory franchise taxes." However, as the Supreme Court recognized, despite the new characterization of the tax, "it is clear that the tax imposed by section 701 was and continues to be a property tax identical in operation and effect to the tax invalidated in American Bank both of which, contrary to the intent of Congress, 'unduly burden federal obligations.' " 502 Pa. at 176, 465 A.2d at 968 (citation omitted).

The court also invalidated section 4 of that Act, which provides:

No cash refund shall be made and no tax credit shall be allowed arising from any voluntary payment of tax under any provision of Article VII or VIII of 'Tax Reform Code of 1971,' upon the basis that the inclusion of United States obligations in the tax base was or is unconstitutional or illegal . . . nor shall any action or proceeding be commenced or further prosecuted for the attain-

---

[4] Act of December 17, 1982, P.L. 1385, 72 P.S. §7701.1.

ment, directly or indirectly, of any such cash re-
fund or tax credit without regard to the legal or
equitable entitlement of the Commonwealth to
such taxes voluntarily paid.

72 P.S. §7701.1. The court struck down the legislature's
attempt to prevent taxpayers from pursuing refunds for
taxes which they had already paid and for which the
United States Supreme Court, in its *American Bank*
decision, had established a basis for that refund.

In the present case, by establishing the Single Ex-
cise Tax, the legislature has again attempted to extin-
guish a taxpayer's opportunity to recover the tax refund
to which he is entitled.

Here, the bank filed petitions for refund of shares
tax with the Board of Finance and Revenue under sec-
tion 503(a) of the Fiscal Code[5]. The Board of Finance
and Revenue granted the bank's petitions for refund and
the Commonwealth did not appeal.

In conclusory fashion, the Commonwealth argues
that the Single Excise Tax did not destroy any right to
refund, and that the present case is distinguishable
from section 4 of the Act of December 17, 1982, P.L.

---

[5] Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §503(a).
That subsection provides in pertinent part:

The Board of Finance and Revenue shall have the power,
and its duty shall be,

(a) . . . to hear and determine any petition for the
refund of taxes, license fees, penalties, fines, bonuses or
other moneys paid to the Commonwealth and to which the
Commonwealth is not rightfully or equitably entitled and,
upon the allowance of any such petition, to refund such
taxes, license fees, penalties, fines, bonuses or other mon-
eys, out of the fund into which such taxes, license fees,
penalties, fines, bonuses or other moneys were originally
paid, or to credit the account of the person, association,
corporation, body politic, or public officer entitled to the
refund.

1385, which the Supreme Court struck down in *Dale National Bank*. However, the Commonwealth presents no explanation of that distinction and we do not see any.

The bank's cause of action arose with the United States Supreme Court decision in *American Bank and Trust Co.* because the Court read the plain language of section 742 to bar a tax "regardless of its *form* if federal obligations must be considered, either directly or indirectly, in *computing* the tax." 463 U.S. at 862 (emphasis in original). Clearly, following that decision, the bank could have presented its petition for refund to the Board of Finance and Revenue for a determination of whether that payment of taxes paid by the bank between 1978 and 1983 which was attributable to the federal bank shares held by the bank, constituted taxes to which the Commonwealth is not rightfully or equitably entitled. *See Bell v. Koppers Co., Inc.*, 481 Pa. 454, 458, 392 A.2d 1380, 1382 (1978) ("[W]hen substantive rights are involved, the applicable law must be that which is in effect at the time the cause of action arises".).

Accordingly, we conclude that the Single Excise Tax, as applied here, violates the bank's right to due process by attempting to extinguish a cause of action after it has accrued.

## Separation of Powers

In *Commonwealth v. Sutley*, 474 Pa. 256, 263, 378 A.2d 780, 782 (1977), the Supreme Court stated:

It is elementary that the legislature may not, under the guise of an act affecting remedies, destroy or impair final judgments obtained before the passage of the act, *and this principle prohibits not only a statutory re-opening of cases previously decided by the court but also legislation affecting the inherent attributes of judgment* . . . .

(quoting *Pennsylvania Co. v. Scott*, 346 Pa. 13, 16-17, 29 A.2d 328, 329 (1942), (emphasis added)).

Accordingly, the legislature may not interfere with a judicial decision after judgment has been reached, nor may the legislature pass a law which negates the effect of a court decision in which the court has invalidated a previous legislative act.

Regarding the separation-of-powers issue, the Commonwealth again argues that no infringement occurs here because the taxing power is vested absolutely in the legislature and the judiciary may not inquire into the basis or rate of a particular tax. However, that power is, of course, limited by the provisions of the state and federal constitutions. *Commonwealth v. Perkins,* 342 Pa. 529, 21 A.2d 45 (1941), *aff'd per curiam.*

In the present case, we believe that our present analysis of the basis of the Single Excise Tax is not an impermissible intrusion into the legislature's taxing power. Rather, the legislature, in attempting to recover those revenues lost because of the Supreme Court's decision in *Dale National Bank,* infringed upon the power of the judiciary to curtail the operation of a state law which unconstitutionally conflicted with federal law. Although the legislature did not in this case blatantly try to overrule a judicial decision, as in the case of *Greenough v. Greenough,* 11 Pa. 489 (1849), *Sutley* provides further that the legislature cannot impair the inherent attributes of judgments. By fashioning legislation which imposes a tax substantively identical to that negated by *Dale National Bank,* the legislature has sought to forestall the effect of the Supreme Court's decision in *Dale National Bank.* In seeking to create a substitute tax, the legislature has imposed a tax which is based, at least indirectly, upon securities of the United States in violation of 31 U.S.C. §742, as declared by the United States Supreme Court in *American Bank and Trust Co.,* and adopted by our state Supreme Court in *Dale National Bank.*

Accordingly, we conclude that Act 66 violates the Separation of Powers clauses of the United States and Pennsylvania Constitutions.

*Constitutionality Per Se of the Single Excise Tax*

Because we have determined that the Single Excise Tax is unconstitutional as applied in the present case, we decline to address the constitutionality per se of that tax because this court cannot anticipate each situation in which the Commonwealth might impose the Single Excise Tax.

In *Commonwealth v. Bonadio,* 490 Pa. 91, 415 A.2d 47 (1980), the Supreme Court stated:

> The question of the constitutionality of a statute cannot generally be determined abstractly but rather is to be determined only as it applies and is sought to be enforced in a particular case before the court, since the power to repeal a statute is not judicial in character; and, furthermore, one who is unharmed by a particular feature of a statute will not be heard to complain of its alleged unconstitutionality.

490 Pa. at 94 n.2, 415 A.2d at 49 n.2.

Moreover, the duty of the courts is to sustain a legislative measure if possible, *Commonwealth v. Columbia Gas and Electric Corp.,* 336 Pa. 209, 8 A.2d 404 (1939). Accordingly, to reach further than necessary for the purpose of this case would be unsound.

The order of the Board of Finance and Revenue is reversed. The record is remanded to the department so that it may resettle the tax against the bank in accordance with this opinion.

ORDER

Now, January 27, 1987, the order of the Board of Finance and Revenue, dated February 1, 1985, is

reversed, and this matter is remanded to the Department of Revenue for a resettlement of the tax of the First National Bank of Fredericksburg in accordance with the attached opinion.

Jurisdiction relinquished.