553 A.2d 937

**FIRST NATIONAL BANK OF FREDERICKSBURG, Appellee,**

v.

**COMMONWEALTH of Pennsylvania, Appellant.**

Supreme Court of Pennsylvania.

Argued May 11, 1988.

Decided Feb. 3, 1989.

---

1. In the words of the immortal Shakespeare: "the apparel oft proclaims the man." Hamlet, I, iii, 65.

Richard D. Spiegelman, Chief Deputy Gen. Counsel, Timothy D. Searchinger, Andrew H. Cline, Deputy Gen. Counsel, Harrisburg, William E. Kellogg, Christos A. Katsaounis, Lisa J. Mungin, Asst. Counsel, Dept. of Revenue, Harrisburg, for appellant.

Frank A. Sinon, Sherill T. Moyer, Jack F. Hurley, Jr., Harrisburg, Calvin D. Spitler, Lebanon, for appellee.

John J. Brennan, Gordon W. Gerber, Kathleen M. McCarthy, Philadelphia, P.J. DiQuinzio, Devon, for amicus curiae PA. Bankers Assn.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

NIX, Chief Justice.

This appeal calls into question the constitutionality of Act 66 of 1983, the Single Exise Tax statute,[1] promulgated by the General Assembly as a direct result of this Court's decision in *Dale National Bank v. Commonwealth*, 502 Pa. 170, 465 A.2d 965 (1983). That decision struck down as violative of federal law the method of computing the Bank Shares Tax[2] which required the taxpayer to include obligations of the United States owned by the taxpayer in its total assets for the purpose of calculating net worth. The Single Exise Tax, a one-time tax upon all taxpayers which claim a benefit from *Dale National Bank*, "for the privilege of doing business in this Commonwealth," 72 P.S. § 8301, has as its express purpose the recoupment of revenue which would otherwise be lost as a result of that decision. 72 P.S. § 8305.

The mechanics of the Single Excise Tax, although at first blush appearing complex, are rather simple. The tax is calculated by multiplying the aggregate amount of the excise tax payable by a fraction, the numerator of which is the total of the refunds claimed or to be claimed and the unpaid shares taxes by *each* taxpayer as a result of *Dale National Bank* and the denominator of which is the total of refunds claimed or to be claimed and unpaid shares taxes of *all* taxpayers. 72 P.S. § 8303. The aggregate amount of excise tax is equal to the total of the refunds claimed or to be claimed and the unpaid shares taxes by all taxpayers as determined by the department. 72 P.S. § 8304. With the

1. 1971, March 4, P.L. 6, No. 2, art. XIII, § 1301, *et seq., added* 1983, December 1, P.L. 228, No. 66, § 7, *imd. effective*, 72 P.S. § 8301 *et seq.*

2. The tax is imposed by the Act of 1971, March 4, P.L. 6, No. 2, art. VII, § 701 *et seq., as amended* 1983, December 1, P.L. 228, No. 66, § 1, effective January 1, 1984, 72 P.S. § 7701 *et seq.*

aggregate amount in effect cancelling out the denominator of the measurement fraction, the tax is actually the amount of the refund claimed or to be claimed by the individual taxpayer, or the amount the taxpayer has refused to pay, as a result of *Dale National Bank*.

Act 66 further provides that a taxpayer subject to its terms must make a lump sum payment of the excise tax on or before April 15, 1984. 72 P.S. § 8306. A taxpayer which has paid its bank shares tax and which seeks or contemplates seeking a refund is permitted to claim a credit against the excise tax due for the full amount of the refund, provided the taxpayer withdraws its refund petition or waives its right to file a petition for a refund. 72 P.S. § 8307.

First National Bank of Fredericksburg, a bank incorporated under the laws of the United States and having its principle place of business in Fredericksburg, Pennsylvania, paid its bank shares taxes in the full amounts settled by the Department of Revenue for the tax years 1978 through 1983, inclusive. On August 30, 1983, the bank petitioned the Board of Finance and Revenue ("The Board") for a full refund of the shares taxes paid, claiming that the department had improperly considered the value of the United States securities owned by the bank in calculating the tax owed, in violation of 31 U.S.C. § 742 [3], and the constitutional principle of state tax immunity annonced in *McCulloch v. Maryland*, 4 Wheat. (17 U.S.) 316, 4 L.Ed. 579 (1819). The

---

**3.** Section 742 of Title 31 of the United States Code provided that [a]ll stocks, bonds, treasury notes, and other obligations of the United States, shall be exempt from taxation by or under state or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except non-discriminatory franchise or other non-property taxes in lieu thereof imposed on corporations and except estate taxes and inheritance taxes.

This provision was transferred to 31 U.S.C. § 3124(a) without substantial variation by Act of 1982, September 13, Pub.L. No. 97–258, 96 Stat. 945. Although section 742 applies only to the taxes imposed up to 1982, and section 3124(a) controls the taxes for 1983, we will refer primarily to section 742. Our discussion is nevertheless equally relevant to section 3124(a).

bank apparently filed its refund petition as a response to the United States Supreme Court decision in *American Bank and Trust Co. v. Dallas County*, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983), that struck down a state tax on bank shares computed on the basis of equity capital which was determined in part by United States obligations. The Court held that the tax was contrary to the language of 31 U.S.C. 742. On May 30, 1984, the Board granted First National Bank of Fredericksburg's Petitions for Refund, thereby reducing the bank's shares tax liability for the tax years 1978 through 1983 by $155,807.28, the full amount of the bank shares taxes paid for those years. The Commonwealth did not appeal this decision of the Board.

In the interim, we decided *Dale National Bank*, and the General Assembly responded with Act 66. In compliance with section 7 of the Act, adding section 1304 of the Tax Reform Code, 72 P.S. § 8304, First National Bank of Fredericksburg timely filed a "Report on Banks Shares Tax Refunds Claimed or to be Claimed Pursuant to Act No. 66 of 1983" on February 1, 1984. Thereafter the bank filed a Single Excise Tax Report for 1983 in accordance with 72 P.S. § 8306. In these reports, the bank indicated that it had previously claimed a refund in the amount of $155,807.32. On May 1, 1984, the department settled the bank's Single Excise Tax at $155,807.28, and a copy of the settlement was sent to the bank on May 11, 1984.[4]

The bank thereupon petitioned the Board of Appeals of the Department of Revenue for a resettlement of the Single Excise Tax assessed. The Board of Appeals denied the petition on September 5, 1984. The bank then sought review with the Board of Finance and Revenue which

4. In March of 1984, the department sent the bank a form which would authorize the department to transfer any refund received by the taxpayer as a result of the *Dale National Bank* decision to satisfy the taxpayer's Single Excise Tax liability. The bank did not execute the form or in any way authorize the department to credit the refund against its excise tax liability. Nevertheless the department offset the refund amount against the tax liability and notified the bank by letter dated November 29, 1984, that its balance was "$0.00".

likewise denied the resettlement petition by order dated January 30, 1985.

On appeal, the Commonwealth Court, sitting *en banc,* reversed the order of the Board and remanded the matter to the department for a resettlement of the bank's Single Excise Tax. 103 Pa.Cmwlth. 337, 520 A.2d 895. The court concluded that Act 66 deprived the bank of due process of law by extinguishing its right to recover the tax refund to which it was entitled. Moreover, the legislature, in promulgating the Single Excise Tax legislation, had impermissibly infringed upon the authority of this Court to curtail the operation of a state law which unconstitutionally conflicted with federal law, in violation of the doctrine of separation of powers. The court was careful to tailor its conclusions to apply solely to First National Bank of Fredericksburg, and expressly refused to address the bank's contention that the Act is unconstitutional *per se.*

Fearing that the decision of the Commonwealth Court would extend beyond the instant litigant and thus have grave ramifications upon the state fisc,[5] the Commonwealth filed a direct appeal to this Court pursuant to 42 Pa.C.S. § 723(b), which permits an appeal as of right to this Court from any final order of the Commonwealth Court entered in an appeal from a decision of the Board of Finance and Revenue.

The Commonwealth presents two arguments which it believes would mandate our reversing or modifying the order under review. It contends that the Commonwealth Court incorrectly assumed without deciding that our decision in *Dale National Bank* should be given retroactive effect. Were the decision to be applied prospectively only, *i.e.,* to bank shares taxes assessed subsequent to the decision, the instant taxpayer would have had no right to a refund on the bank shares taxes paid. In the alternative, the Commonwealth contends that the bank was only enti-

5. In its brief, the Commonwealth states that the potential refund liability it assumed as a result of *Dale National Bank* totaled $423,182,-471, citing 14 *Pa.Bulletin* 704 (February 25, 1984).

tled to the shares taxes paid reduced on a *pro rata* basis, and not a complete refund of those taxes. We begin our inquiry with the first of these contentions.

## I.

### *First National Bank of Fredericksburg's Right to a Refund*

The initial question presented to this Court is whether *Dale National Bank* provided taxpayers subject to the bank shares tax with a legal right to a refund of taxes erroneously assessed by including United States obligations in their tax base. As the Commonwealth correctly notes, this inquiry is essential to our subsequent determination of the constitutionality of the Single Excise Tax. Because the Single Excise Tax is effective only to the extent tax revenues are lost by reason of the *Dale National Bank* decision, 72 P.S. § 8305, that is, to the extent that taxpayers may claim refunds or refrain from paying bank shares taxes, we must determine whether *Dale National Bank* has provided First National Bank of Fredericksburg with these rights.

The instant litigants disagree on whether we resolved the question of the applicability of *Dale National Bank* to similarly situated taxpayers in that decision. It is the Commonwealth's position that we decided nothing more in that case than whether the consideration of United States securities in the assessment of the bank shares tax conflicted with 31 U.S.C. § 742. Because of a stipulation entered into between the parties, the appropriate relief to be given upon the invalidation of this procedure was not an issue. The stipulation provided, in relevant part, that

"If the Court sustains the position of the Petitioner as to the exclusion of U.S. securities and accrued interest thereon ... it is agreed that the Petitioner's Bank Shares Tax as of January 1, 1978 is $–0–...."

*Dale National Bank,* 502 Pa. at 174, 465 A.2d at 967. First National Bank of Fredericksburg argues that the issue of retroactivity was squarely before this Court in *Dale National Bank* and was properly decided, albeit obliquely in a footnote, against the Commonwealth. In resolving the validity of Act of 1982, December 17, P.L. 1385, No. 317, § 4, 72 P.S. § 7701.1,[6] which prohibited any party from seeking a tax refund as a result of the improper inclusion of United States obligations in its tax base, we stated that "section 4 is manifestly invalid, as it impermissibly attempts to 'extinguish a cause of action which has already accrued to a claimant.'" *Id.,* 502 Pa. at 177 n. 3, 465 A.2d at 969 n. 3, *quoting Gibson v. Commonwealth,* 490 Pa. 156, 161, 415 A.2d 80, 83 (1980). The bank, in proferring this argument, seems to overlook the fact that section 4 also deprived the Board of its authority to issue refunds. Had we intended our language in *Dale National Bank* to provide a refund right to other taxpayers, we would have struck down this portion of the infirm legislation as well. However, the issue of retroactivity was not before us because of the stipulation between the litigants,

**6.** This provision, prior to amendment, read in part as follows:
[N]o cash refund shall be made and no tax credit shall be allowed arising from any voluntary payment of tax under any provision of Article VII or VIII of the Tax Reform Code of 1971, upon the basis that the inclusion of United States obligations in the tax base was or is unconstitutional or illegal or in the case of taxes due prior to the effective date of this act upon the basis of the inclusion in the law of section 701.2 [section 7701.2 of this title], nor shall any action or proceeding be commenced or further prosecuted for the attainment, directly or indirectly, of any such cash refund or tax credit, without regard to the legal or equitable entitlement of the Commonwealth to such taxes voluntarily paid. Nor shall any suit, proceeding, or action, whether brought before or after the effective date hereof, be maintained in any administrative board, tribunal, or court of record for the recovery, recoupment, setoff, refund, credit or counterclaim for any such tax payment upon any such basis. For the purpose of this section, every tax payment shall be presumed to be a voluntary payment and the payment of tax under mere protest shall be deemed to constitute a voluntary payment. Only the payment of these taxes under actual and direct duress, coercion or compulsion against the individual payor shall not be deemed to be a voluntary payment.

and so we did not address it then.[7]

The applicability of a judicial pronouncement to other litigants or potential litigants is a matter of judicial discretion to be resolved on a case-by-case basis. *August v. Stasak*, 492 Pa. 550, 424 A.2d 1328 (1981). *See Incollingo v. Ewing*, 444 Pa. 299, 282 A.2d 206 (1971). The authority within the judiciary to determine the reach of its decisions does not however preclude the legislature from independently providing persons with legal rights as a result of judicial pronouncements. Where a litigant's right to some legal remedy may be derived from statute, it would be a meaningless exercise for a court to determine whether an identical right is vested in the litigant as a result of prior decisional law.

First National Bank of Fredericksburg contends that section 503(a)(4) of the Fiscal Code, 72 P.S. § 503(a)(4) (repealed),[8] has provided it with a legal right to a refund. Section 503(a), prior to the repeal of subsection (4) and enactment of a similar provision at 72 P.S. § 10003.1, stated in pertinent part:

The Board of Finance and Revenue shall have the power, and its duty shall be, (a) Except as hereinafter provided with respect to the Department of Transportation, to hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonuses or other moneys paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled and,

7. The bank also argues that the mere adoption of the Single Excise Tax is a concession by the General Assembly that *Dale National Bank* was to apply to other taxpayers similarly situated. To the contrary, language in section 1305 of the Act, 72 P.S. § 8305, to the effect that the tax would be abated should no revenue be lost on account of *Dale National Bank* (*i.e.*, if the decision should not apply to other taxpayers), clearly indicates that the legislature was unsure of the impact of the case.

8. Subsection (4) of section 503(a) was repealed by Act of 1985, July 1, P.L. 78, No. 29, § 15, effective immediately "with respect to taxes, and other moneys due, paid, settled, asserted, determined or appraised on or after January 1, 1985." It therefore applies to the instant decision since the bank shares taxes were settled in the years 1978 through 1983.

upon the allowance of any such petition, to refund such taxes, license fees, penalties, fines, bonuses or other moneys, out of the fund into which such taxes, license fees, penalties, fines, bonuses or other moneys were originally paid, or to credit the account of the person, association, corporation, body politic, or public officer entitled to the refund.... All such petitions for refund must be filed with the board within two years of the payment of which refund is requested, or within two years of the settlement in the case of taxes or bonus, whichever period last expired, except

> (4) When any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently held by final judgment of a court of competent jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous. In such case, the petition to the board may be filed either prior or subsequent to such final judgment but must be filed within five years of the payment of which a refund is requested, or within five years of the settlement of such taxes, bonus or other moneys due the Commonwealth, whichever period last expires. The board shall have jurisdiction to hear and determine any petition for refund filed prior to such final judgment only if, at the time of the filing thereof, proceedings are pending in a court of competent jurisdiction wherein the claims of unconstitutionality or erroneous interpretation made in the petition for refund may be established, and in such case the board shall not act upon the petition for refund until the final judgment determining the question or questions involved in such petition has been handed down.

Section 503(a)(4) has been given a broad reading by this Court. In *Hotel Casey Co. v. Ross*, 343 Pa. 573, 23 A.2d 737 (1942), the Court reversed an order of the Dauphin County Court of Common Pleas (predecessor to the Commonwealth Court) which quashed a taxpayer's petition for a writ of mandamus to compel the Board of Finance and

Revenue to grant a refund. Previously this Court had issued a decision in *Wellsboro Hotel Company's Appeal*, 336 Pa. 171, 7 A.2d 334 (1939), interpreting the restaurant mercantile license tax so as to exclude hotels operating dining rooms for the convenience of their guests. Petitioner Hotel Casey Company sought a refund of taxes it had paid pursuant to the interpretation of the tax statute held to be erroneous. Without elaboration, the Board refused. This Court never addressed the question of whether *Wellsboro Hotel* should be given retroactive application, but instead concluded that the Board lacked discretion to deny the refund.

> [I]f an application is made for a refund under § 503 of the Fiscal Code within the period of limitations fixed thereby and it appears that there was a tax paid to the Commonwealth to which the Commonwealth was not equitably or rightfully entitled, the provision for a refund or credit is mandatory.

*Hotel Casey*, 343 Pa. at 580, 23 A.2d at 741.

Although the Court in *Hotel Casey* never expressly concluded that section 503(a)(4) provided the taxpayer with a legal right, this conclusion is inherent in its reversal of the order denying mandamus, which is a remedy available to persons aggrieved by the improper acts of an executive officer or agency of the Commonwealth. *See* 12 P.S. § 1911 (repealed); Pa.R.C.P. 1091 *et seq.*

█ A taxpayer thus has a right to a refund under section 503(a)(4) if two conditions are met: (1) the petition must be filed within five years of the settlement or payment of the tax, and (2) the taxpayer must prove that a court of competent jurisdiction has held, since the payment of the tax, that the statute under which payment was made had been erroneously interpreted. *See Federal Deposit Insurance Corp. v. Board of Finance and Revenue*, 368 Pa. 463, 84 A.2d 495 (1951).[9] First National Bank of Fredericksburg has met

9. This case required the petitioner to aver the existence of a decision of a court of competent jurisdiction correcting an erroneous interpretation of a taxing statute. Where the court's decision was not filed

both conditions with its petition filed August 30, 1983, seeking resettlement of taxes erroneously paid for the tax years 1978 through 1983 inclusive.

■ We therefore conclude that First National Bank of Fredericksburg, as a taxpayer aggrieved by the Commonwealth's settlement of bank shares taxes under an erroneous interpretation of Article VII of the Tax Reform Code of 1971, 72 P.S. § 7701 *et seq.*, had an immediate, legally enforceable right, as a result of the *Dale National Bank* decision, to a refund of the taxes improperly paid, pursuant to section 503(a)(4) of the Fiscal Code.

*Pro Rata Deduction*

■ Although the Commonwealth's failure to appeal the resettlement orders entered May 30, 1984, did not preclude our consideration of the issue of the bank's right to a refund, this omission does preclude our consideration of whether First National Bank of Fredericksburg's right to a refund was limited to a *pro rata* formulation. Regardless of the reasoning employed by the Board in granting the refund, the amount thereof was clear and could have been contested on appeal by the Commonwealth if it believed a *pro rata* deduction was all that was required by *Dale National Bank.* The Commonwealth, having failed to except to the amount of the refund, cannot now question it in this collateral review.

## II.

■ Having concluded that a taxpayer against which bank shares taxes were improperly assessed on United States obligations has a legally enforceable right to a refund of these taxes, we must next determine whether the General Assembly has unconstitutionally infringed upon that right in enacting Article XIII of the Tax Reform Code in section 7 of Act 66 of 1983.

until subsequent to the petition, relief was not available. Section 503(a)(4) has since been amended to allow the petitioner to take advantage of decisions filed after the refund petition is filed.

The United States Supreme Court has consistently held that section 742 of Title 31 (and its successor, section 3124(a) of that title) prohibits state taxes imposed on federal obligations, either directly or indirectly as part of a tax on the taxpayer's total property or assets. Up until 1983, this provision did not, however, preclude nondiscriminatory taxes imposed on discrete property interests, such as corporate shares, even though the value of the interest was measured by the underlying assets which included United States obligations. *American Bank*, 463 U.S. at 858, 103 S.Ct. at 3372, 77 L.Ed.2d at 1076. In 1959, section 742 was amended to include a second sentence: "This exemption extends to every form of taxation that would require either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax," with specific exception for, *inter alia*, "nondiscriminatory franchise or other non-property taxes in lieu thereof imposed on corporations." Nevertheless, the practice of including federal securities as assets in calculating the value of bank shares subject to tax continued. It was not until 1983 that the propriety of this practice reached the United States Supreme Court.

The Court in *American Bank* found the new language of section 742 "sweeping": "Under the plain language of the 1959 amendment ... the tax is barred regardless of its *form* if federal obligations must be considered, either directly or indirectly, in computing the tax." 463 U.S. at 862, 103 S.Ct. at 3374, 77 L.Ed.2d at 1079 (emphasis in original). The Court concluded that "Congress meant to bar shares taxes to the extent they consider federal obligations in the computation of the tax," 463 U.S. at 864, 103 S.Ct. at 3375, 77 L.Ed.2d at 1080, and accordingly struck down a state shares tax based on an equity capital formula.

A similar method of computing net worth of individual bank shares existed in Pennsylvania at the time of *American Bank*. When confronted with the legality of this practice in *Dale National Bank*, we followed the lead of the United States Supreme Court.

Here it is equally apparent that the bank shares tax assessed against petitioner for tax year 1978 improperly took into consideration obligations of the United States owned by the petitioner.... [T]he bank shares tax imposed on petitioner was computed on the basis of equity capital, which in turn was determined, in part, by United States obligations.

*Dale National Bank*, 502 Pa. at 175, 465 A.2d at 967–968. We therefore invalidated the bank shares taxes erroneously assessed against the petitioner.

The Single Excise Tax was enacted as a legislative response to the *Dale National Bank* decision. The tax is imposed only upon those taxpayers which have claimed or intend to claim refunds, or have refused to pay taxes assessed, as a result of *Dale National Bank*, 72 P.S. § 8302. The tax base is equal to the total benefits taxpayers subject to its scope might derive from *Dale National Bank. Id.* § 8303. Since those benefits are measured by the amount of bank shares taxes which were computed on the basis of assets which included federal obligations, it is clear that the Single Excise Tax is nothing more than a thinly veiled attempt by the legislature to do indirectly what it is precluded by section 742 [10] from doing directly, to wit, imposing a state tax on bank shares valuated by considering United States obligations.

It is of no moment that the Single Excise Tax is not a tax upon bank shares but instead is a surcharge upon refunds and taxes unpaid. The prohibition of section 742 extends to all state taxes, regardless of form:

Nor can the 1959 amendment be read to apply only to income taxes; it reaches *"every* form of tax ..." (emphasis supplied). Indeed, Congress felt compelled to exempt estate and inheritance and franchise taxes from the scope of its amendment precisely because the amendment was *not* limited to income taxes. Congress understood the

10. To be consistent, we cite section 742 of Title 31. We note, however, that section 3124(a) is actually applicable to the Single Excise Tax which was adopted subsequent to the enactment of section 3124(a).

amendment's effect; both the Senate and House Reports explained that the amendment "makes it clear that both the principal and interest on US obligations are exempt from *all State taxes* except nondiscriminatory franchise, etc., taxes" (emphasis supplied). Senate Report, at 2; House Report, at 2. Congress intended to sweep away formal distinctions and to invalidate all taxes measured directly or indirectly by the value of federal obligations, except those specified in the amendment.

*American Bank,* 463 U.S. at 867, 103 S.Ct. at 3377, 77 L.Ed.2d at 1082.

Any suggestion that the Single Excise Tax is a nondiscriminatory franchise tax and is thus exempt from section 742 is totally devoid of merit. The tax is imposed only upon those taxpayers that have contested the settlement of the bank shares tax by reason of *Dale National Bank.* Although the statute professes to be a tax "for the privilege of doing business in this Commonwealth," 72 P.S. § 8301, it does not apply equally to all banks, title insurance companies, bank and trust companies, and trust companies doing business in Pennsylvania. Instead, it specifically distinguishes between those entities that have pursued the recovery of taxes assessed on obligations of the federal government and those entities that have acquiesced to the Commonwealth retaining the improper exaction of bank shares taxes. Clearly for a privilege tax to be nondiscriminatory it must apply equally to all who share the privilege. *Cf. Saulsbury v. Bethlehem Steel Co.,* 413 Pa. 316, 196 A.2d 664 (1964). The excise tax, as its title suggests, applies only to "certain" financial institutions, and thus discriminates against owners of federal securities. *See Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983).

Having resolved that the Single Excise Tax is a contradiction of federal law in violation of Article VI, clause 2 of the federal constitution, we need not consider the numerous other issues presented by First National Bank of Fredericksburg regarding the constitutionality of the legislation.

Accordingly, the order of the Commonwealth Court, reversing the order of the Board of Finance and Revenue and remanding the matter to the Department of Revenue for the resettlement of the Single Excise Tax of First National Bank of Fredericksburg, is affirmed.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

LARSEN, Justice, dissenting.

I agree that Section 503(a)(4) of the Fiscal Code, 72 P.S. § 503(a)(4), mandates a refund of taxes paid to the Commonwealth to which the Commonwealth is not rightfully entitled. The relevant portions of the Fiscal Code provide:

§ 503. **Refunds of state taxes, license fees, et cetera**
The Board of Finance and Revenue shall have the power, and its duty shall be,

(a) Except as hereinafter provided with respect to the Department of Transportation, *to hear and determine any petition for the refund of taxes,* license fees, penalties, fines, bonuses or other moneys *paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled and, upon the allowance of any such petition, to refund such taxes,* license fees, penalties, fines, bonuses or other moneys, out of the fund into which such taxes, license fees, penalties, fines, bonuses or other moneys were originally paid, or to credit the account of the person, association, corporation, body politic, or public officer entitled to the refund. . . .

(4) "When any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently held by final judgment of a court of competent jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous. In such case, the petition to the board may be filed either prior or subsequent to such final judgment but must be filed within five years of the payment of which a refund is requested, or within five years of the settlement of such taxes, bonus or other

moneys due the Commonwealth, whichever period last expires. The board shall have jurisdiction to hear and determine any petition for refund filed prior to such final judgment only if, at the time of the filing thereof, proceedings are pending in a court of competent jurisdiction wherein the claims of unconstitutionality or erroneous interpretation made in the petition for refund may be established, and in such case the board shall not act upon the petition for refund until the final judgment determining the question or questions involved in such petition has been handed down." [1]

72 P.S. § 503(a)(4) (emphasis supplied). I disagree, however, that Section 503(a)(4) requires that the Commonwealth refund to the appellee, First National Bank of Fredericksburg (First National Bank), bank shares taxes paid by it for five years prior to 1983. To establish its entitlement to a refund, First National Bank must show that the Commonwealth is not entitled to the shares taxes paid by the bank. Under the circumstances of this case, it is necessary to establish that the Commonwealth is not entitled to the bank shares tax because that tax was invalid as declared by this Court in *Dale National Bank v. Commonwealth*, 502 Pa. 170, 465 A.2d 965 (1983). Where, however, a court holds that a tax that was paid to the Commonwealth is invalid, but also holds that its ruling of invalidity is to have prospective effect only, then the invalidity and entitlement to refunds would only apply to future levies and collections. A court decision that is applied prospectively only does not invalidate that which happened in the past. *See Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Thus, for appellant First National Bank to be entitled to a refund of bank shares taxes paid prior to the date of the *Dale* decision (September 15, 1983), *Dale* must be applied retrospectively. Because the majority, without specifically saying so, applies *Dale* retroactively, I dissent.

1. Subsection 4 was repealed by the Act of July 1, 1985, P.L. 78, No. 29 § 15.

In *Dale*, the parties (Dale National Bank and the Commonwealth) entered into a "Stipulation of Facts," which, among other things, provided that:

"If the Court sustains the position of the [bank] as to the exclusion of U.S. Securities and accrued interest thereon, ..., it is agreed that the [bank's] bank share tax as of January 1, 1978 is $-0-...."

In *Dale*, this Court stated: "We hold, in accordance with the recent decision of the Supreme Court of the United States in *American Bank and Trust Co. v. Dallas County*, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983), interpreting 31 U.S.C. § 742, that obligations of the United States owned by [Dale National Bank] were improperly taken into consideration in computing [Dale National Bank's] bank shares tax." Thus, in accordance with that holding and in view of the stipulation of the parties, we vacated the order of the Board of Finance and Revenue which refused Dale National Bank a refund of taxes paid on United States obligations.

The majority assumes that as a result of the *Dale* decision, the appellee First National Bank, as a matter of law, is entitled to a full deduction of the amount of the federal obligations held by the bank from the value of the stocks, so that all of its tax liability was eliminated for the tax years in question. The majority's assumption is only true if *Dale* is to be applied retroactively.[2] However, as the majority points out, because of the stipulation between the parties in *Dale*, the issue of retroactivity was not before us then and thus we did not address it at that time.

2. The majority concludes that: "A taxpayer thus has a right to a refund under section 503(a)(4) [of the Fiscal Code] if two conditions are met: (1) The petition must be filed within five years of the settlement or payment of the tax, and (2) the taxpayer must prove that a court of competent jurisdiction has held, since the payment of the tax, that the statute under which payment was made had been erroneously interpreted." (P. 942.) The second condition stated by the majority must be qualified to the extent that the decision of a court of competent jurisdiction declaring the tax invalid must have retroactive application.

Neither the Federal Constitution [3] nor the State Constitution [4] requires or forbids retroactive application of court decisions announcing a new rule. The United States Supreme Court, in considering the question of retroactivity, has held that a state court may apply its decisions prospectively. *Great Northern Railway Co. v. Sunburst Oil & Refining Co., supra.* "Retroactive application is a matter of judicial discretion which must be exercised on a case by case basis." *August v. Stasak,* 492 Pa. 550, 554, 424 A.2d 1328, 1330 (1981) (citation omitted). The appellant Commonwealth argues that the circumstances of the instant case require that the *Dale* decision be applied prospectively. I agree.

In *Chevron Oil Company v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court enunciated three separate factors that are to be considered in determining whether a decision should be applied retroactively or prospectively:

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that 'we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation'.... Finally we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' " ...

*Id.* at 106, 107, 92 S.Ct. at 355, 30 L.Ed.2d at 306 (citations omitted). We recognized in *Gibson v. Commonwealth,* 490

**3.** *Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932).

**4.** *Commonwealth v. Geschwendt,* 500 Pa. 120, 127, 454 A.2d 991, 995 (1982) (plurality opinion).

Pa. 156, 415 A.2d 80 (1980) that our unwillingness in certain circumstances to apply a decision retroactively is motivated by our concern that those formerly advantaged by the old rule will not be unfairly prejudiced. We recognized the three factors announced in *Chevron,* and acknowledged their applicability in our analysis in *Gibson.* 490 Pa. at 163, N. 4, 415 A.2d at 84, N. 4. Considering these three factors and applying them to the circumstances of the present case, the decision in *Dale* should be given prospective application only.

First, our decision in *Dale,* which applied the United States Supreme Court's *American Bank* decision, established a new rule of law overriding past precedent. For more than a century the United States Supreme Court recognized bank shares taxes as an exception to the general rule that national banks are immune from taxation by the states. *See Van Allen v. Assessors,* 3 Wall 573, 18 L.Ed. 229 (1866). Under that exception, it was lawful for states to tax bank shares without excluding the value of the bank's federal obligations holdings. In *Society for Savings v. Bowers,* 349 U.S. 143, 148, 75 S.Ct. 607, 610, 99 L.Ed. 950 (1955), the United States Supreme Court, in an opinion by Justice Harlan, recognized that "this exception to the general rule of immunity is firmly embedded in the law." In *American Bank,* decided July 5, 1983, the United States Supreme Court analyzed a 1959 Amendment to Rev.Stat. § 3701, 31 U.S.C. § 742 [5] as prohibiting indirect taxation of federal obligations such as the bank shares tax. This change in the long established rule was abrupt and not clearly foreshadowed. As Justice (now Chief Justice) Rehnquist points out in his dissenting opinion in *American Bank* (joined by Justice Stevens), the 1959 Amendment to Rev. Stat. § 3701 did not in any way alter Rev.Stat. § 5219, as amended, 12 U.S.C. § 548. It was to Rev.Stat. § 5219 that the court previously looked to uphold the validity of the exception for bank shares taxes. *American Bank and*

5. In 1982 Rev.Stat. § 3701, 31 U.S.C. § 742 was replaced by 31 U.S.C. § 3124(a) substantially unchanged.

*Trust Co. v. Dallas County,* 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072. (Dissenting Opinion, Rehnquist, J.)

Second, in weighing the merits and demerits of the rule and its purpose and effect, it is clear that the new rule's purpose is fully accomplished by prospective application. One of the primary purposes of the new rule is to encourage investments in federal obligations and to protect the borrowing power of the United States Government. *See Society For Savings v. Bowers, supra.* The appellant Commonwealth in its brief, and the Pennsylvania Bankers Association in its *amicus curiae* brief, argue that the purpose of the new rule is amply achieved by prospective application. I agree. Encouraging investments in United States obligations, and protecting the borrowing power of the federal government is not defeated and is given effect by prospective application of *Dale.*

Third, in weighing the equities involved in this case, it is apparent that retroactive application of the new rule would cause an inequity or hardship to the Commonwealth. The appellant Commonwealth points out in its brief that "Pennsylvania set its shares tax rate on the assumption that United States obligations were includible in the tax base." [6] The taxes were collected and spent by the Commonwealth in providing banks with regulatory services and other public services for banks and all taxpayers. For years Pennsylvania relied upon the established interpretation of the bank shares tax in imposing taxes on banks to meet a significant portion of the Commonwealth's annual budget. Conversely, no inequity or hardship results to the bank by a purely prospective application of the new rule. In the face of "firmly embedded" law, no bank could claim that it relied upon a reduction in the share tax liability because of its ownership of federal obligations prior to July, 1983. Retroactive application of *Dale* mandating refunds of the bank shares taxes paid would cause a hardship on the Commonwealth and provide the bank with an undeserved windfall. In short, the Commonwealth reasonably relied upon a pre-

6. Appellant's Brief, p. 16.

sumptively valid tax as a significant source of income to balance annual budgets. To apply *Dale* retroactively and require the refunds sought would result in severe financial hardship to the Commonwealth. Thus, all three factors lead directly to the conclusion that *Dale* should be applied prospectively. Accordingly, I would reverse the order of the Commonwealth Court.

PAPADAKOS, J., joins in this dissenting opinion.