415 A.2d 80

Donald E. GIBSON, Administrator, etc., et al., Appellants,

v.

COMMONWEALTH of Pennsylvania et al.

Florence E. HELSEL, Administratrix, etc., et al., Appellants,

v.

COMMONWEALTH of Pennsylvania et al.

Richard F. McCLEMENT, Administrator, etc., Appellant,

v.

COMMONWEALTH of Pennsylvania et al.

Gladys J. RUSSELL, Administratrix, etc., Appellant,

v.

COMMONWEALTH of Pennsylvania et al.

David SELDERS et al., Appellants,

v.

COMMONWEALTH of Pennsylvania et al.

Supreme Court of Pennsylvania.

Argued March 11, 1980.

Decided June 2, 1980.

John E. Evans, Jr., Pittsburgh, for appellants.

Herbert L. Olivieri, Chief, Torts Litigation Unit, John L. Sweezy, Harrisburg, for Com. and Dept. of Environmental Resources.

W. Arch Irvin, Jr., Wayman, Irvin & McAuley, Pittsburgh, for Gannett, Fleming, Corddry & Carpenter, Inc. amicus curiae in support of appellants.

Robert G. Rose, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, for Laurel Management Co. amicus curiae.

Frederick N. Egler, Egler & Reinstadtler, Pittsburgh, Samuel R. DiFrancesco, Jr., William G. Barbin, Gleason, DiFrancesco, Shahade & Markovitz, Johnstown, for Greater Johnstown Water Authority, amicus curiae.

## OPINION OF THE COURT

ROBERTS, Justice.

This court abrogated sovereign immunity on July 14, 1978, in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), application for reargument denied, 479 Pa. 411, 390 A.2d 181 (1978). Thereafter the Legislature promulgated Act 152 creating, for the first time in Pennsylvania, statutory sovereign immunity. Act of September 28, 1978, P.L. 788, §§ 1 et seq. This case presents the question of whether it is constitutional to apply Act 152 to causes which became actionable prior to the Act. Because we conclude that Act 152 may not constitutionally govern such actions, this Court reverses the orders of the Commonwealth Court dismissing the present consolidated case, and remands for proceedings consistent with this opinion.

Laurel Run Dam No. 2 flooded Tanneryville, Pennsylvania during a heavy rainstorm on July 20, 1977. Between July 11 and October 4, 1978, appellants filed in Commonwealth Court five separate actions in trespass against appellees Department of Environmental Resources and the Commonwealth, alleging that appellees' negligent supervision of the dam caused the flood and resulting loss of life, limb, and

property.[1]  The court consolidated the actions.  See Pa.R. Civ.P. 213(a).  By preliminary objection, appellees moved to dismiss the actions on the ground that appellees were immune from suit under Section 2 of Act 152, 42 Pa.C.S. § 5110.[2]  The Commonwealth Court granted the motion, holding that Act 152 applied to appellants' actions, that those actions did not fall within any of the eight exceptions to sovereign immunity enumerated in the Act, and that such application did not violate any constitutional guarantees.[3] This appeal followed.

1. Appellants at No. 155 March Term, 1979 are Donald E. Gibson, Administrator of the Estates of Theresa A. Gibson, Ernest S. Gibson, Pamela L. Gibson and Cynthia L. Gibson, Deceased and Donald E. Gibson, in his own right, et al.  Their complaint was filed on July 11, 1978.  Appellants at No. 156 March Term, 1979 are Florence E. Helsel, Administratrix of the Estate of Sharon L. Stoner, Deceased and Florence E. Helsel, in her own right.  Their complaint was filed on July 19, 1978.  Appellant at No. 157 March Term, 1979 is Richard F. McClement, Administrator of the Estate of Edith Fern Weaver. His complaint was filed on July 18, 1978.  Appellant at No. 161 March Term, 1979 is Gladys J. Russell, Administratrix of the Estate of Kenneth W. Weaver.  Her complaint was filed on July 20, 1978. Appellants at No. 172 March Term, 1979 are David Selders and Gloria Selders, et al.  Their complaint was filed on October 4, 1978.

2. Although appellees raised the sovereign immunity issue by preliminary objection, rather than by pleading a new matter as required by Pa.R.Civ.P. 1030, we will consider that objection here because the Commonwealth Court reached its merits and appellants do not challenge appellees' improper procedural presentation of the claim.  See *Freach v. Commonwealth*, 471 Pa. 558, 564 n.6, 370 A.2d 1163, 1166 n.6 (1977).

3. The eight exceptions to sovereign immunity enumerated in 42 Pa.C.S. § 5110 are:
    "(1) Vehicle liability.—Damages caused by the operation of any motor vehicle.  As used in this paragraph 'Motor vehicle' means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.
    (2) Medical-professional liability.—Damages caused by Commonwealth health care employees of medical facilities or institutions or by a doctor, dentist, nurse and related health care personnel.
    (3) Care, custody or control of personal property.—Damages caused by the care, custody or control of personal property in the possession of Commonwealth agencies, including Commonwealth-owned property of persons held by the Commonwealth, except that the sovereign immunity of the Commonwealth is retained as a bar

Section 5 of Act 152 expressly manifests the Legislature's intention to apply the Act to claims, like those of appellants, which arose before the Act's promulgation. Compare Political Subdivision Tort Claims Act, Act of November 26, 1978, P.L.1399, § 803, 53 P.S. § 5311.803 (statutory tort immunity of political subdivisions applies only to causes of action arising sixty days after enactment). Appellants here concede that application of Act 152 to their actions would completely extinguish their remedy for appellees' alleged negligence. Appellants claim, however, that such elimination of remedy would violate Article I, section 11 of the Pennsylvania Constitution and the Fourteenth Amendment

to actions on claims arising out of Commonwealth activities involving the use of nuclear and other radioactive equipment, devices and materials.

(4) Commonwealth real estate, highways and sidewalks.—Damages caused by a dangerous condition of Commonwealth real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of the Commonwealth and Commonwealth real property leased to private persons, and highways under the jurisdiction of Commonwealth agencies except as limited in paragraph (5).

(5) Potholes and other dangerous conditions.—Damages, other than property damages, caused by a dangerous condition of highways under the jurisdiction of Commonwealth agencies created by potholes or sinkholes or other similar conditions created by natural elements, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of damage which was incurred and that the Commonwealth agency had actual written notice of the dangerous condition of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous conditions.

(6) Care, custody or control of animals.—Damages caused by animals in the care, custody or control of Commonwealth agencies, including but not limited to police dogs and horses and animals incarcerated in Commonwealth laboratories, but shall not include damages caused by wild animals including but not limited to bears and deer except as otherwise provided by statute.

(7) Liquor store sales.—Damages caused by the sale of liquor at Pennsylvania liquor stores by employees of the Pennsylvania Liquor Control Board created by and operating under the act of April 12, 1951 (P.L.90, No. 21), known as the 'Liquor Code,' if such sale is made to any minor, or to any person visibly intoxicated, or to any insane person, or to any person, known as an habitual drunkard or of known intemperate habit.

(8) National Guard activities.—Damages caused by a member of the Pennsylvania military forces."

of the United States Constitution because appellants' rights of action accrued prior to the Act.  We agree.

■ It is well-settled that the Legislature may not extinguish a right of action which has already accrued to a claimant.  This Court has consistently held that the Legislature's repeal of a law which created a right of action does not disturb any actions accrued thereunder:

> "There is a vested right in an accrued cause of action
> .   .  . .  A law can be repealed by the law giver;  but
> the rights which have been acquired under it, while it was
> in force, do not thereby cease.  It would be an absolute
> injustice to abolish with the law all the effects it had
> produced.  This is a principle of general jurisprudence;
> but a right to be within its protection must be a vested
> right."

*Lewis v. Pennsylvania R. R. Co.*, 220 Pa. 317, 324, 69 A. 821, 823 (1908) (quotations omitted);  see *Rebel v. Standard Sanitary Mfg. Co.*, 340 Pa. 313, 319, 16 A.2d 534, 537–38 (1940); *Commonwealth ex rel. Margiotti v. Cunningham*, 337 Pa. 289, 301–02, 10 A.2d 559, 563–64 (1940);  accord, *Creighan v. Pittsburgh*, 389 Pa. 569, 574, 132 A.2d 867, 870 (1957);  *Smith v. Fenner*, 399 Pa. 633, 641, 161 A.2d 150, 154 (1960).

■ The separation of powers doctrine suggests *a fortiori* that the Legislature may not disturb actions which have accrued under the Judiciary's authority.  See *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193 (1971).  As this Court has explained:

> "In the very nature of things, a law that is enacted after
> the case has arisen can be no part of the case.  Such a law
> can have only a forced and unnatural relation to the case,
> and must produce an untrue decision;  a decision, not of
> the case arising between the parties, as it ought to be, but
> of a case partly created by the legislature.
>
> When, therefore, the constitution declares that it is the
> exclusive function of the courts to try private cases of
> disputed right, and that they shall administer justice 'by
> the law of the land,' and 'by due course of law,' it means
> to say, that the law relating to the transaction in contro-

versy, at the time when it is complete, shall be an inherent element of the case, and shall guide the decision; and that the case shall not be altered, in its substance, by any subsequent law."

*Menges v. Dentler*, 33 Pa. 495, 498–99 (1859); see *Kay v. Pennsylvania*, 65 Pa. 269, 277 (1870); *Commonwealth v. Sutley*, 474 Pa. 256, 263, 378 A.2d 780, 783 (1977).

■ This established view is consistent with federal decisional law which squarely holds that a legislature may not constitutionally eliminate *in toto* a remedy, whether judicially or legislatively created, which has already accrued. See *Ettor v. Tacoma*, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773 (1913); *Forbes Pioneer Boat Line v. Board of Comm'rs*, 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647 (1922) (Holmes, J.); *Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934) (Brandeis, J.); *W. B. Worthen Co. ex rel. Bd. of Comm'rs v. Kavanaugh*, 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298 (1935) (Cardozo, J.); accord, *United States Trust Co. v. New Jersey*, 431 U.S. 1, 26–7, 97 S.Ct. 1505, 1520, 52 L.Ed.2d 92 (1977). As Chief Justice Marshall wrote, "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 5 U.S. (1 Cranch) 87, 102, 2 L.Ed. 60 (1803).

■ A tort cause of action generally accrues on the date of the accident or injury. See *Smith v. Fenner*, 399 Pa. 633, 641, 161 A.2d 150, 154 (1960); *Rebel v. Standard Sanitary Mfg. Co.*, 340 Pa. 313, 16 A.2d 534 (1940); see generally *Bell v. Koppers Co., Inc.*, 481 Pa. 454, 458, 392 A.2d 1380, 1382 (1978) (procedural rules apply to cases filed after effective dates; substantive rights are governed by law in effect at time causes of action accrue). Although tort claims against the Commonwealth were not actionable before our decision in *Mayle*, see e. g. *Meagher v. Commonwealth*, 439 Pa. 532, 266 A.2d 684 (1970), *Mayle* allowed such suits to be maintained. Appellees contend that *Mayle* should not be applied "retrospectively" to claims such as these which arose before the decision in *Mayle*. We cannot agree. Fully applying

*Mayle*, as we must, we conclude that appellants' claims accrued before promulgation of Act 152, and therefore may not be extinguished by the Act.

Judicial decisionmaking inherently requires courts to resolve conflicts after they arise. See P. Mishkin, *The High Court, The Great Wit and Due Process of Time and Law*, 79 Harv.L.Rev. 56, 60 (1962). As Justice Holmes observed: "Judicial decisions have had retrospective operation for near a thousand years." *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910) (dissenting opinion). Only recently have courts limited the full effect of their decisions. See e. g. *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 375 A.2d 1285 (1977); see generally P. Mishkin, *The High Court*, supra; R. J. Aldisert, The Judicial Process 877–938 (1976). The prime impetus behind this occasional willingness not to give a decision full effect is the concern that a novel decision will unfairly prejudice those formerly advantaged by the old rules.[4] See e. g. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (decision on statute of limitations applied in limited fashion to avoid bar on tort recovery); *Cipriano v.*

**4.** The Supreme Court has articulated three factors to consider when determining whether to give a decision full effect:

> "First, the decision to be applied nonretroactively must establish a new principle of law  .   .  .  . Second, it has been stressed that we must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. Finally, we weighed the inequity imposed by retroactive application, for [w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity."

*Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (quotations and citations omitted); see *Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 375 A.2d 1285 (1977). We note that though our analysis focuses upon the third factor of unfair prejudice, clearly deemed the most fundamental in the case law, the second factor, of assessing the relation between the new rule and its application is also significant here. The rationale underlying the *Mayle* decision—avoiding unfairness to those tortiously injured—could only be advanced by full application of *Mayle*.

*Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (decision striking down bond law applied in limited fashion to avoid "injustice or hardship" to cities and bondholders); *England v. Louisiana Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (holding that state adjudication of federal claims is res judicata in subsequent federal court action applied in limited fashion to avoid undue prejudice to plaintiffs).

We see no reason here not to give *Mayle* full effect. First it must be obvious that application of *Mayle* to claims based on torts occurring prior to that decision will not unfairly prejudice the Commonwealth. It would be unrealistic to assume that the Commonwealth has committed torts in reliance upon case precedent granting it immunity. See R. Traynor, *La Rude Vita, La Dolce Giustizia; Or Hard Cases Can Make Good Law,* 29 U.Chi.L.Rev. 223, 231 (1962). In any event, we held in *Mayle* that considerations of fairness required the abrogation, not maintenance, of the sovereign immunity doctrine. There this Court rejected the argument that elimination of that doctrine would overburden the Commonwealth:

> "[T]he Commonwealth has show no evidence that tort liability of a government or a public authority has ever resulted in either undue clogging of the courts or destabilization of government finances. Indeed, the Commonwealth admits it does not know what, if anything, will happen to court dockets and public finances if the immunity of the Commonwealth from tort liability is abolished. This sort of speculation cannot support a doctrine so 'plainly unjust . . . to persons injured by the wrongful conduct of the State [and which] [n]o one seems to defend . . . as fair.'

If anything, the information before us suggests that making governments liable for their torts will not substantially raise the costs of government or upset governmental financial stability. Certainly, the greatest threats to the financial stability of state and local governments in recent years have not concerned tort liability, but limita-

tions on taxing authority and liability on contractual obligations such as bonds and labor agreements. Further, because negligence involves the reasonableness of the actor's conduct, unreasonably expensive protective measures will not be required of governments any more than they are required of private parties. Welfare economic analysis suggests that government, if suable in tort, may become more efficient, although this improvement may not appear on its balance sheets as added assets or reduced liabilities."

*Mayle v. Pennsylvania Dept. of Highways*, supra, 479 Pa. at 394–95, 388 A.2d at 714.

Second, this Court has already applied *Mayle* to those cases pending in the courts on the date of the *Mayle* decision. E. g. *Steinberg v. Commonwealth, Dept. of Public Welfare*, 480 Pa. 321, 389 A.2d 1086 (1978); *Grieser v. Commonwealth, Dept. of Transportation*, 480 Pa. 447, 390 A.2d 1263 (1978); *Tokar v. Commonwealth, Dept. of Transportation*, 480 Pa. 598, 391 A.2d 1046 (1978); *Dubree v. Commonwealth*, 481 Pa. 539, 393 A.2d 293 (1978); *Kenno v. Commonwealth, Dept. of State Police*, 481 Pa. 562, 393 A.2d 304 (1978); *Brungard v. Hartman*, 483 Pa. 200, 394 A.2d 1265 (1978); *Reinert v. Pennsylvania, Dept. of Transportation*, 482 Pa. 612, 394 A.2d 490 (1978). There is no principled reason to discriminate now against appellants whose causes also accrued before *Mayle*, but whose complaints were filed post-*Mayle*.[5] Though the date of a complaint's institution is relevant to the tolling of a statute of limitations, it has no place in the determination of appellants' substantive rights. Significantly, both classes of suits affect the Commonwealth in equal measure, and therefore must be treated in like fashion. Applying *Mayle*, then, we hold that because appellants' claims accrued on July 20, 1977, these claims are free

5. Indeed, appellants at No. 155 March Term, 1979 filed their action before the *Mayle* decision. See note 1, supra. There is no principled basis on which to treat them differently from the other appellants here.

from the subsequently enacted statutory bar of sovereign immunity.[6]

The orders of the Commonwealth Court are reversed and the consolidated case is remanded for proceedings consistent with this opinion.

LARSEN, J., joins in this opinion and files a concurring opinion.

FLAHERTY, J., joins in the concurring opinion of LARSEN, J., and in this opinion.

EAGEN, C. J., and O'BRIEN and NIX, JJ., dissent.

LARSEN, Justice, concurring.

I join Mr. Justice Roberts' opinion, however, I would go further and declare Act 152 unconstitutional.

FLAHERTY, J., joins in this concurring opinion.

6. In light of our disposition, we express no view on appellants' claims that the damage provisions of Act 152 and the Act in its entirety are unconstitutional. See 1 Pa. C.S. § 1925.