## Silcox v. Bower

*Johathan A. Briskin,* for plaintiff.

*Francis P. Fitzsimmons,* for defendant Reading Hospital and Medical Center.

*Melinda S. Shoop,* for defendants.

*Wiley P. Parker,* for defendant West Reading Radiology Associates.

*Grant Fleming,* for defendants Hershey Medical Center.

DOWLING, *J.,* February 22, 1989 — Concealed like a fetus in utero, there lies hidden in Senate Bill 646 (approved April 13, 1988), an act dealing primarily with substantial changes in the post-conviction rights of convicted criminals, a section abolishing the cause of action for wrongful birth,[1] though such a topic bears about the same relationship to criminal law as does bullfighting to agriculture. To further complicate the matter, tucked in at the end following numerous changes in criminal procedure is section 8 declaring that only section 8305[2] shall have a retroactive effect. The reason for placing such a fundamental change in the substan-

---

1. 42 Pa.C.S. §8305 (1988).

2. It also includes section 8306 which deals with a matter not here relevant, but concerning injuries in utero.

tive law of torts among a statute completely over-hauling the Post Conviction Hearing Act is not known. Be that as it may, it is the basis of the issues before us wherein defendants[3] have filed motions for judgment on the pleadings.[4]

We have before us a wrongful birth action filed on February 19, 1987 by the parents of Amy Silcox, who was born March 31, 1985 with catastrophic birth defects including mental retardation and severe anomalies of the lower limbs and hands. The complaint alleges that the above-named defendants were participants of the prenatal care of Amy Silcox and her mother, Mary Silcox. Plaintiffs contend that the defendants knew of these anomalies due to ultrasound tests and amniocentesis[5] and failed to inform them prior to Amy's birth. They claim that had they known of these anomalies prior to Amy's birth, they would have had an abortion. Amy Silcox, through her parents, claims that she would have preferred non-existence to a life of mental retardation.

3. All defendants have joined in the motion excepting Marilyn S. Kirshner, M.D. and West Reading Radiology Associates.

4. All 16 counts and 101 paragraphs of the amended complaint are included in the motions except that certain of the defendants have excluded sections 7 and 8 and paragraph 94 of count 16 as they deal with an alleged battery by defendant Dr. Janet Kirk. These several paragraphs are of no immediate consequence in view of our disposition of the pending motions.

5. "*Amniocentesis* — The perforation or tapping of the amnion (the inner of two layers of membranes which form the bag containing the fetus in the pregnant uterus) with the use of a needle (through the abdominal wall). This procedure is used to remove and study part of the amniotic fluid in pregnancies of sensitized Rh negative women." Schmidt, Attorneys' Dictionary of Medicine, Matthew Bender Co. 1986, Vol. 1, at 175.

Three different sets of defendants have filed a motion for judgment on the pleadings. The first set are a group of doctors practicing gynecological and obstetrical care in the Reading area known as Verbinski, Bower, Anderson and Associates. Several of the doctors in this firm provided Mary Silcox with the initial prenatal treatment in the form of ultrasound tests. The second are doctors employed by Hershey Medical Center who performed amniocentesis on the plaintiff Mary Silcox, and the third is a facility in which Mary Silcox received a "follow-up" ultrasound test as recommended by doctors at Hershey Medical Center.

Section 8305 provides:

"(a) *Wrongful birth* — There shall be no cause of action or award of damages on behalf of any person based on a claim that, but for an act or omission of the defendant, a person once conceived would not or should not have been born. Nothing contained in this subsection shall be construed to prohibit any cause of action or award of damages for the wrongful death of a woman, or on account of physical injury suffered by a woman or a child, as a result of an attempted abortion. Nothing contained in this subsection shall be construed to provide a defense against any proceeding charging a health care practitioner with intentional misrepresentation under the Act of October 5, 1978 (P.L. 1109), known as the Osteopathic Medical Practice Act, the Act of December 20, 1985 (P.L. 457), known as the Medical Practice Act of 1985, or any other act regulating the professional practices of health care practitioners."

The instant cause of action precedes this act by some three years, but since it expressly provides that section 8305 "shall have retroactive effect, including application to any case pending or on

appeal" (section 8) defendants assert that plaintiffs, as a matter of law, cannot recover and therefore their motion for judgment on the pleadings must be granted. Plaintiffs, as they must, can only argue that the act should be declared void and unconstitutional, particularly with respect to its retroactive effect.

The courts, and especially a court of common pleas, must approach an act of the General Assembly with respect and if necessary to consider its constitutionality, do so with the least possible intrusion. We will therefore confine ourselves to the issue of the act's retroactive effect, though its overall legality is suspect.

In *Speck v. Finegold,* 497 Pa. 77, 439 A.2d 110 (1981), the Pennsylvania Supreme Court affirmed the right of parents to recover for negligent medical treatment resulting in "wrongful birth," and in *Ellis v. Sherman,* 512 Pa. 14, 515 A.2d 1327 (1986), the cause of action was explicitly held to extend to post-conception acts of negligence.

*Barasch v. Pennsylvania Public Utility Commission,* 516 Pa. 142, 167, 532 A.2d 325, 337 (1987) stated, "Neither the federal Constitution nor a state constitution invalidates a non-penal statute merely because it is retroactive, *unless such legislation impairs contractual or other vested rights."* (emphasis supplied) We have a statutory presumption against retroactivity (1 Pa.C.S. §1926) as well as a strong common-law principle. See *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983). *Krenzelak* was interpreting the equitable distribution provisions of the 1980 Divorce Code and the question was whether to apply it to real estate transferred by one spouse prior to enactment of the code. In refusing to permit retroactive application, the court noted:

"Retroactive application of new legislation will offend the due process clause if, balancing the interests of both parties, such application would be unreasonable. See *Chase Securities Corporation v. Donaldson,* 325 U.S. 304, 315-6, 65 S.Ct. 1137, 1142-3, 89 L.Ed. 1628 (1945); *Valladares v. Valladares,* 80 App.Div.2d 244, 250-1, 438 N.Y.S.2d 810, 815 (1981), affirmed, 55 N.Y.2d 388, 449 N.Y.S.2d 687, 434 N.E.2d 1054 (1982). See generally, Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Har. L. Rev. 692, 694-5 (1960). Traditionally, retrospective laws which have been deemed reasonable are those which 'impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted.' *Smith v. Fenner,* 399 Pa. 633, 641, 161 A.2d 150, 154 (1960), quoting *Barnesboro Borough v. Speich,* 40 Pa. Super. 609, 612 (1909). See also *Costa v. Lair,* 241 Pa. Super. 517, 520, 363 A.2d 1313, 1314 (1976)." *Krenzelak, supra.*

This principle was applied in *Fernley v. Board of Supervisors of Schuylkill Twp.,* 509 Pa. 513, 502 A.2d 585 (1985) to refuse retroactivity to a statute which would have extinguished plaintiff's right to develop the property. It must be noted, however, that in neither the *Krenzelak* nor *Fernley* decisions did the statutes specifically provide for retroactivity. Thus, it was held in *Commonwealth v. Bashore,* 349 Pa. Super. 345, 349, 503 A.2d 33, 35 (1986), that "the explicit use of the word 'retroactive' meets the requirements of a clear and manifest intent on the legislature that the act be applied retroactively."

The precise issue therefore appears to be whether or not plaintiffs acquired a vested right in their

action for wrongful birth. We think this matter is controlled by *Gibson v. Commonwealth,* 490 Pa. 156, 415 A.2d 80 (1980), which dealt with the doctrine of sovereign immunity. In *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), the Pennsylvania Supreme Court abrogated the doctrine of sovereign immunity. The decision was handed down on July 14, 1978, and within a few months, on September 28, 1978, the legislature promulgated Act 152 which created for the first time in Pennsylvania a statutory right of sovereign immunity. In the *Gibson* case, the court was presented with a question of whether it was constitutional to apply Act 152 to causes which became actionable prior to the statute. The court first noted that section 5 of Act 152 expressly manifested the legislature's intent to apply the act retroactively. Nevertheless, it held that since the statute completely extinguished the plaintiff's remedy, such elimination would violate Article I, section 11 of the Pennsylvania Constitution and the Fourteenth Amendment of the U.S. Constitution because the rights of action accrued prior to the act:

"It is well-settled that the legislature may not extinguish a right of action which has already accrued to a claimant. This court has consistently held that the legislature's repeal of a law which created a right of action does not disturb any actions accrrued thereunder:

"There is a vested right in an accrued cause of action . . . A law can be repealed by the law giver; but the rights which have been acquired under it, while it was in force, do not thereby cease. It would be an absolute injustice to abolish with the law all the effects it had produced. This is a principle of

general jurisprudence; but a right to be within its protection must be a vested right." *Gibson* at 161, 415 A.2d at 83.

The court further noted that:

"The separation of powers doctrine suggests a fortiori that the legislature may not disturb actions which have accrued under the judiciary's authority. See *Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 274 A.2d 193 (1971). As this court has explained:

"'In the very nature of things, a law that is enacted after the case has arisen can be no part of the case. Such a law can have only a forced and unnatural relation to the case, and must produce an untrue decision; a decision, not of the case arising between the parties, as it ought to be, but of a case partly created by the legislature.

"'When, therefore, the constitution declares that it is the exclusive function of the courts to try private cases of disputed right, and that they shall administer justice "by the law of the land," and "by due course of law," it means to say, that the law relating to the transaction in controversy, at the time when it is complete, shall be an inherent element of the case, and shall guide the decision; and that the case shall not be altered, in its substance, by any subsequent law." *Gibson* at 161-2, 415 A.2d at 83. (citations omitted)

Defendants seek to distinguish *Gibson* from the instant case by stating that the cause of action for wrongful birth is not a vested right. To do this, they assert that *Speck v. Finegold, supra,* did not confer a vested right for wrongful birth, but simply set forth limited circumstances in which the plaintiff could bring such a cause of action. What they are apparently saying is that the *Finegold* decision must be limited to its facts, but this is contraindicated, not

only by the language in the decision itself, but by the well-established doctrine that principles of law are not, unless so indicated, limited to the factual situation which gives rise to their enunciation. In *Finegold,* the court noted that the injuries suffered were the result of negligently performed vasectomy and abortion procedures, but that this "merely required the extension of existing principles of tort law to new facts: damages alleged to result from the birth of an unplanned, unwanted, genetically defective child. It is fundamental that one may seek redress for every substantial wrong. . . . " *Finegold* at 83, 439 A.2d at 113.

We think it evident that *Speck v. Finegold,* as well as *Ellis v. Sherman, supra,* established the right, under appropriate circumstances, of a cause of action for wrongful birth; and since retroactive application of Act 47 would extinguish this right, it is unconstitutional.

Accordingly, we enter the following

## ORDER

And now, February 22, 1989, plaintiff's motions for judgment on the pleadings are denied.