# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela DiPaolo,                 :
         Petitioner         :
                           :
        v.                   :
                           :
UPMC Magee Women's Hospital   :
(Workers' Compensation Appeal   :
Board),                      :   No. 878 C.D. 2021
         Respondent     :   Argued: May 16, 2022

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE FIZZANO CANNON            FILED: June 13, 2022

Petitioner Angela DiPaolo (Claimant) petitions for review from the July 1, 2021, decision and order of the Workers' Compensation Appeal Board (Board), which affirmed the August 18, 2020, decision and order of the Workers' Compensation Judge (WCJ). The WCJ granted the modification petition filed by Respondent UPMC Magee Women's Hospital (Employer) and changed Claimant's benefit status from total to partial based on a December 3, 2019, Impairment Rating Evaluation (IRE). Upon review, we affirm.

## I. Factual & Procedural Background

The facts underlying this appeal are not in dispute. Claimant sustained a work-related injury on August 30, 2008. WCJ Op. at 3; Certified Record (C.R.)

#5.  Employer issued a Notice of Compensation Payable and began paying Claimant temporary total disability (TTD) benefits of $403.50 per week.  *Id*.  On May 26, 2011, Claimant underwent an IRE (2011 IRE), which returned a 6% impairment rating based on the Sixth Edition of the American Medical Association Guides to the Evaluation of Permanent Impairment (AMA Guides).  *Id*.  Employer filed a Notice of Change in Benefit Status based on the 2011 IRE, and Claimant's benefit status was changed to temporary partial disability (TPD) as of the date of the 2011 IRE.  *Id*.

At the time Claimant underwent the 2011 IRE, the governing statutory provision was former Section 306(a.2) of the Workers' Compensation Act (Act),[1] which provided for impairment ratings based on the current edition of the AMA Guides.  *Former* 77 P.S. § 511.2.  Subsequently, however, in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406, 416-17 (Pa. Cmwlth. 2015) (*Protz I*), this Court found the previous IRE statute unconstitutional and determined that IREs should be subject to the Fourth Edition of the AMA Guides, the edition in effect when Section 306(a.2) was enacted.  Our Supreme Court struck Section 306(a.2) in its entirety in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827, 835-36 (Pa. 2017) (*Protz II*).[2]  Based on the *Protz* cases, Claimant sought reinstatement of her TTD status, which was granted as of February 19, 2016.  WCJ Op. at 3.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 4 of the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, repealed by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111).

[2] Both Courts found the previous IRE provision impermissibly delegated legislative authority to a private entity, the AMA, without safeguards to ensure either General Assembly

Thereafter, the General Assembly enacted Act 111 of 2018 (Act 111), which replaced former Section 306(a.2) with Section 306(a.3). 77 P.S. § 511.3.[3] Like the previous provisions, Act 111 enabled an employer to require a claimant to undergo an IRE once the claimant had received at least 104 weeks of total disability benefits after sustaining a work-related injury. *See Rose Corp. v. Workers' Comp. Appeal Bd. (Espada)*, 238 A.3d 551, 561 (Pa. Cmwlth. 2020). Act 111 also reduced the previous threshold impairment rating for modification from TTD to TPD status from 50% compared to that of a whole and unimpaired person to 35%, making it more difficult for employers to change total disability status to partial disability status. *Id*. at 562. Also, under Section 306(a.3), as under the previous provision, TTD status has no time limit, but TPD status after modification via an IRE is limited to 500 weeks of benefits.[4] *Id*. at 558. Relevant to this appeal, Act 111 specifically granted employers credit for any weeks of TTD or TPD benefits paid prior to its effective date of October 24, 2018. 77 P.S. § 511.3, Historical and Statutory Notes. This allowed employers to seek IREs and pursue modification for workers like Claimant whose injuries occurred prior to Act 111.

Based on Act 111, Employer requested that Claimant undergo another IRE, which she ultimately did on December 3, 2019 (2019 IRE). WCJ. Op. at 3. After the 2019 IRE returned an impairment rating of 23%, below the 35% threshold

---

supervisory authority over the AMA Guides used to calculate the results of IREs or accountability of the AMA authors. *See Protz II*, 161 A.3d at 836.

[3] Act of October 24, 2018, P.L. 714 No. 111 (Act 111), 77 P.S. § 511.3.

[4] The 500-week period for TPD benefits, based on a showing that the claimant has recovered some degree of earning power, predated the 1996 enactment of the previous IRE provisions, which also adopted the 500-week period. *See Goodrich v. Workmen's Comp. Appeal Bd. (Shenango China)*, 645 A.2d 302, 303-04 & nn.3-4 (Pa. Cmwlth. 1994) ("Pursuant to Section 306(b) of the Act, 77 P.S. § 512, the statutory period for partial disability is up to 500 weeks.").

for maintaining TTD status, Employer filed a modification petition seeking to change Claimant's status to TPD. *Id*. Claimant raised and preserved constitutional challenges to Act 111, which the WCJ noted, but having no jurisdiction to rule on such issues, the WCJ granted Employer's petition and modified Claimant's status to TPD as of December 3, 2019, the date of the 2019 IRE. *Id*. at 6 & Order. The Board confirmed that it also had no jurisdiction to rule on the constitutionality of its own enabling legislation, but noted that the constitutional issues raised by Claimant had already been addressed and rejected by this Court in *Pierson v. Workers' Compensation Appeal Board (Consol Pennsylvania Coal Company LLC)*, 252 A.3d 1169 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021). Board Op., 7/1/21, at 3-4; C.R. #8. The Board therefore affirmed the WCJ's decision. *Id*. & Order. Claimant now appeals to this Court.[5]

## II. Discussion

Claimant challenges the credit provisions of Act 111, which state:

(1) For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under section 306(a.3)(1) of the act, *an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph*. This section shall not be construed to alter the requirements of section 306(a.3) of the act.

---

[5] "This Court's review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 605 n.5 (Pa. Cmwlth. 2018).

4

(2) For the purposes of determining the total number of weeks of partial disability compensation payable under section 306(a.3)(7) of the act, *an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph*.

Act 111, § 3(1), (2) (emphasis added). Here, because Employer had paid Claimant 104 weeks of TTD benefits between her injury in 2008 and 2010, Employer claimed credit for those weeks under Subsection 1 and sought an IRE under Act 111 in December 2019. WCJ Op. at 3. Claimant maintains that by permitting employers to use weeks of TTD accrued under the previous, unconstitutional IRE statute, Act 111's credit provisions violate the Pennsylvania Constitution's due process and due course of law principles and the "reasonable compensation" requirement of Article III, Section 18 of the Pennsylvania Constitution.

A party challenging the constitutionality of a statute must meet a heavy burden. We presume legislation to be constitutional absent a demonstration that the statute "clearly, palpably, and plainly" violates the Constitution. *Konidaris v. Portnoff L. Assocs., Ltd.*, 953 A.2d 1231, 1239 (Pa. 2008). Applying this standard, we reject Claimant's constitutional challenges to Act 111.

## A. Due Process & Due Course of Law Claims

Article I, Section 1 of the Pennsylvania Constitution is the basis of constitutional due process protections.[6] Pa. Const. art. I, § 1. The due process requirement with respect to both prospective and retroactive aspects of legislation is

---

[6] "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1.

5

"a legitimate legislative purpose furthered by rational means." *Bible v. Dep't of Lab. & Indus.*, 696 A.2d 1149, 1155 (Pa. Cmwlth. 1997) (stating that Pennsylvania has adopted the federal constitutional standard for due process analysis of economic legislation). With regard to retroactive application of statutes, "retrospective laws which have been deemed reasonable are those which impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted." *Id*. at 1156 (quoting *Krenzelak v. Krenzelak*, 469 A.2d 987, 991 (Pa. 1983)). A vested right in this context is "something more than a mere expectation based upon an anticipated continuance of existing law. It must have become a title legal or equitable to the present or future enforcement of a demand, or a legal exemption from a demand made by another." *Id*. (quoting *Lewis v. Pa. R.R. Co.*, 69 A. 821, 823 (Pa. 1908)).

Due course of law protections arise from Article I, Section 11 of the Pennsylvania Constitution.[7] Pa. Const. art. I, § 11. Our Supreme Court has explained that

> [a]lthough similar to the oft-used term "due process," the term "due course of law" has a distinct meaning in the Remedies Clause: "The right to due process protects people against official deprivations of liberty or property by the state, except by 'law of the land.' By contrast, the right to 'due course of law' provides an independent guarantee of legal remedies for private wrongs by one person against another, through the state's judicial system."

---

[7] "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. art. I, § 11.

6

*Konidaris*, 953 A.2d at 1240 (quoting Ken Gormley, et al., The Pennsylvania Constitution: A Treatise on Rights and Liberties, 14.1-14.5 (2004)). Like due process, due course of law requires a party to establish a vested right impacted by a retroactive statutory action, and the definition of a vested right is the same. *Id.* at 1241-42 (quoting *Lewis*, 69 A. at 823). Therefore, at issue here is whether Claimant has a vested right in the TTD status restored to her as of February 2016 after the *Protz* cases struck the prior IRE statute but before the enactment of Act 111 in October 2018.

This Court squarely addressed this question in *Pierson*. There, the claimant sustained a work-related injury in 2014. 252 A.3d at 1172. In light of the *Protz* cases, the claimant was not subject to an IRE and therefore was on TTD status until December 2018, when the employer sought an IRE after Act 111 became effective. *Id.* The IRE returned an impairment rating of 3% and the claimant's status was modified to TPD as of the IRE date. *Id.* The claimant preserved due process and due course of law challenges to Act 111, which the WCJ and Board did not rule on, recognizing their jurisdictional limitations. *Id.* On the claimant's appeal to this Court, we rejected the claimant's constitutional claims, holding that while a workers' compensation claimant does have a "certain right to benefits until such time as he is found to be ineligible for them," there are also "reasonable expectations under the Act that benefits may change." *Id.* at 1179. We explained that claimants did not "automatically lose anything by the enactment of Act 111," which "simply provided employers with the means to change a claimant's disability status from total to partial by providing the requisite medical evidence that the claimant has a whole body impairment of less than 35%, after receiving 104 weeks of TTD benefits." *Id.* at 1179.

7

Following our decision in *Pierson*, this Court has consistently held that Act 111 does not abrogate or substantially impair a claimant's vested rights in workers' compensation benefits because there is no right to ongoing TTD status. *See, e.g.*, *Hutchinson v. Annville Twp. (Workers' Comp. Appeal Bd.)*, 260 A.3d 360, 367 (Pa. Cmwlth. 2021) (relying on *Pierson* to dismiss claimant's constitutional claims against Act 111). In *Sochko v. National Express Transit Service (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 490 C.D. 2021, filed March 16, 2022), 2022 WL 791817 (unreported),[8] we explained further:

> [E]ven during the time when the previous IRE provisions had been invalidated by the *Protz* cases but before Act 111 became effective, employers were not devoid of a means to modify a claimant's benefit status. Section 413(a) of the Act, which has been part of our workers' compensation legislation since its beginning over 100 years ago, has always provided employers (as well as claimants) with the general ability to seek a change in benefits at any time based on "proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased." 77 P.S. § 772. Section 306(b) of the Act, which also has roots in the early decades of workers' compensation law, specifically enables employers to modify a claimant's disability status from total to partial by showing that the claimant has regained some earning power. 77 P.S. § 512(2). Since the 1996 onset of more cost-efficient IREs, employers were less likely to challenge a claimant's status via litigation, but the option was always available. Thus, while it is true that "a claimant retains a certain right to benefits until such time as he is found to be ineligible for them," claimants do not acquire a vested right in total disability status at any given time because that status has always been subject to potential litigation by employers.

---

[8] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

*Id*., slip op. at 12-13, 2022 WL 791817, at \*6 (citations omitted). Notably, the claimant is not without recourse, because Act 111 "specifically provides that a claimant placed in partial disability status based on an IRE may challenge the change in his or her status by either presenting a subsequent IRE reflecting a 35% or more impairment rating or establishing through litigation that his or her earning power has decreased." *Id*., slip op. at 13 n.10, 2022 WL 791817, at \*6 (citing 77 P.S. § 511.3(3), (4)).

Claimant asserts the same kind of vested rights argument that this Court has repeatedly rejected and suggests that *Pierson* and similar cases were wrongly decided. Claimant's Br. at 14 & 21. We discern no merit in Claimant's arguments.

The cases Claimant cites in support of her vested right argument are distinguishable. In *Giant Eagle, Inc./OK Grocery Co. v. Workers' Compensation Appeal Board (Weigand)*, 764 A.2d 663 (Pa. Cmwlth. 2000), this Court declined to allow application to previously injured claimants of a new provision that would limit how claimants' rate of compensation was calculated when they were able to work part-time while receiving benefits. *Id*. at 668. Although the employer sought only prospective reduction of the rate of compensation and did not ask to recover benefits previously paid, this Court nevertheless found the provision could not be applied to previously injured claimants, who "have a vested right in the continuation of workers' compensation benefits *until found to be ineligible*" and because "[t]he law in effect on the date of injury determines the method of calculating benefits." *Id*. (emphasis added).

However, the provision at issue in *Giant Eagle* did not clearly express an intent to apply to prior-injured claimants, while Act 111's credit provisions do so in plain language. *See Pierson*, 252 A.3d at 1180 (citing *Rose Corp.*). Also, the

9

challenge in *Giant Eagle* was based on statutory interpretation rather than constitutional challenges, which place a heavy burden on challengers. *See Konidaris*, 953 A.2d at 1239. Finally, the provision at issue in *Giant Eagle* would have changed the actual amount of benefits the claimant received, whereas Act 111 only enables an employer to seek an IRE, which, depending on the results, may or may not allow the employer to seek modification of the claimant's status from TTD to TPD. Thus, *Giant Eagle* is inapplicable here.

*Gibson v. Commonwealth*, 415 A.2d 80 (Pa. 1980), is likewise inapt. In *Gibson*, our Supreme Court addressed the General Assembly's enactment in 1978 of sovereign immunity after it had been abrogated by a Court decision earlier that year. *Id*. at 81. The Court held that the plaintiffs had a vested right in their cause of action for the Department of Environmental Resources' negligent supervision of a dam and that "a legislature may not constitutionally eliminate *in toto* a remedy, whether judicially or legislatively created, which has already accrued." *Id*. at 83 (quoting *Lewis*, 69 A. at 823). However, the issue in *Gibson* was the elimination of a cause of action in its entirety, which would have put the *Gibson* plaintiffs out of court with no remedy at all. By contrast, workers' compensation benefits have always been subject to modification in various ways, including from TTD to TPD (with a 500-week limit). This was the case before the introduction of IREs in 1996 and during the period between the *Protz* cases and Act 111 when IREs were not permitted. *See Goodrich v. Workmen's Comp. Appeal Bd. (Shenango China)*, 645 A.2d 302, 303-04 & nn.3-4 (Pa. Cmwlth. 1994). Thus, *Gibson* is also inapplicable here.

Likewise, in *Ieropoli v. AC&S Corp.*, 842 A.2d 919 (Pa. 2004), the legislation at issue would have extinguished an accrued cause of action against

10

certain defendants for personal injuries due to decades of exposure to asbestos. *Id*. at 921-23. As in *Gibson*, our Supreme Court in *Ieropoli* concluded the General Assembly could not eradicate an accrued cause of action because the cause of action itself was the remedy in which the plaintiffs had a vested right. *Id*. at 929-30. As discussed above, however, an accrued cause of action and an award of workers' compensation benefits are not equivalent; workers' compensation benefits, even once awarded, have always been subject to modification, including from TTD to TPD, and are therefore not analogous to an accrued cause of action in tort. Accordingly, *Ieropoli* does not apply here.

In *Konidaris*, 2003 legislation allowed localities to impose attorneys' fees for tax collection on delinquent taxpayers retroactively to 1996. 953 A.2d at 1233. The plaintiffs, delinquent school district taxpayers for years between 1996 and 2003, asserted a vested right not to pay attorneys' fees associated with tax collection for years when such attorneys' fees were not part of the legislation. *Id*. at 1234 & 1242. Our Supreme Court declined to rule on the vested right issue, noting that "our Remedies Clause jurisprudence has almost exclusively dealt with tort law causes of action between individuals" where there is a clear injury, and that retroactive application of tax legislation has long been accepted and upheld. *Id*. at 1242-43. The *Konidaris* Court observed that the purpose of the Remedies Clause is "the protection from legislative action of an individual's remedy for an injury done. In this case, there is no 'injury done.'" *Id*. at 1242. Here, Claimant attempts to distinguish *Konidaris* by arguing that "there is no question that there was an injury done" in this case and that Claimant is entitled to benefits. Claimant's Br. at 35. However, as discussed at length above, benefits can always be modified; they are not set in stone as of the date of injury.

11

Claimant also seeks to distinguish *Bible*. In 1995, the General Assembly amended the Act's treatment of hearing loss. 696 A.2d at 1151. Prior to the amendment, based on a Supreme Court case interpreting the relevant provision of the Act, a claimant who showed a complete loss of hearing "for all practical intents and purposes" was eligible for 260 weeks of specific loss benefits. *Id.* That legal regime led to an undesirable situation with inconsistencies in proofs that led either to 260 weeks of benefits or none at all. *Id.* at 1156. The amendment allowed for partial hearing loss to be awarded based on the impairment rating analysis for hearing loss in the AMA Guides so that a finding of 30% hearing loss would result in 78 weeks of benefits (78 is 30% of 260). *Id.* The amendment expressed that the changes "shall apply retroactively to all claims existing as of the effective date of this act for which compensation has not been paid or awarded." *Id.*

Claimants with pending claims challenged the retroactivity of the amendment as a due process violation. *Bible*, 696 A.2d at 1153-54. Reversing this Court, which had limited its holding to a determination that the amendment improperly impaired contractual obligations, our Supreme Court concluded that the amendment did not violate due process because while an injured worker with a pending claim for compensation has a cognizable interest in obtaining reasonable compensation for injuries, he or she has not acquired a vested right to compensation of a fixed amount, which, in the context of *Bible*, meant the full 260 weeks of benefits available prior to the amendment. *Id.* at 1156. By introducing a method of measuring partial hearing loss, the amendment did not impair the right to receive compensation for hearing loss, even up to 260 weeks if the claimant showed the loss was complete rather than partial: "only the remedy has been varied." *Id.*

12

Notably, the *Bible* Court added that the claimants' interest in having their claims adjudicated based on the state of the law before the amendment was enacted was not a vested right, but rather a "mere expectation based upon an anticipated continuance of existing law." 696 A.2d at 1156 (quoting *Lewis*). Moreover, the Court explained that the amendment did not violate due process principles because after balancing the interests of claimants and employers, the amendment amounted to a rational means of implementing a legitimate legislative purpose, specifically the problematic "all or nothing" state of the law prior to the amendment. *Id.*

Claimant argues that, unlike the claimants in *Bible*, she attained vested rights in the full complement of benefits available to her at the time of her injury because her claim was accepted by Employer. Claimant's Br. at 24-27. Claimant's assertions rest on the proposition that when our Supreme Court struck the previous IRE provisions in *Protz*, that provision was void *ab initio*, as though it had never been enacted in 1996, and any claimant who underwent an IRE prior to the *Protz* decisions was automatically restored to pre-IRE status. *See* Claimant's Br. at 13 & n.1. However, our courts have never held that to be the case, and several decisions have placed temporal limits on the application of *Protz II*. *See, e.g.*, *Dana Holding Corp. v. Workers' Comp. Appeal Bd. (Smuck)*, 232 A.3d 629 (Pa. 2020) (explaining that "a holding of this Court that a statute is unconstitutional will generally be applied to cases pending on direct appeal in which the constitutional challenge has been raised and preserved"); *White v. Workers' Comp. Appeal Bd. (City of Phila.)*, 237 A.3d 1225 (Pa. Cmwlth. 2020) (holding that a claimant who was not litigating an IRE when *Protz II* was issued could be reinstated to TTD status only as of date of petition for reinstatement, not the earlier effective date when her status was

13

changed to TPD after a 2013 IRE); *Weidenhammer v. Workers' Comp. Appeal Bd. (Albright College)*, 232 A.3d 986 (Pa. Cmwlth. 2020) (stating that a claimant may not seek reinstatement based on *Protz* if more than three years have elapsed since the last TPD payment). Thus, contrary to Claimant's assertions, we have never held that any IRE preceding the *Protz* cases was automatically erased in its entirety, including the weeks of benefits paid by employers for claims arising prior to Act 111.

For these reasons, we conclude that Claimant has not established a vested right in her post-*Protz*-pre-Act 111 TTD status. She therefore has not met the requirement for relief under either due process or due course of law principles.

## B. Claims Pursuant to Article III, Section 18 of the Pennsylvania Constitution

Article III, Section 18 of the Pennsylvania Constitution states:

> The General Assembly may enact laws requiring the payment by employers, or employers and employes jointly, of reasonable compensation for injuries to employes arising in the course of their employment, and for occupational diseases of employes, whether or not such injuries or diseases result in death, and regardless of fault of employer or employe, and fixing the basis of ascertainment of such compensation and the maximum and minimum limits thereof, and providing special or general remedies for the collection thereof[.]

Pa. Const. art. III, § 18. We have stated that

> [t]his provision empowers the General Assembly, if it chooses, to enact laws to compensate for injuries or diseases, including those that cause the death of an employee, that arise out of their employment. Rather than placing any limitation on the General Assembly, Article III, § 18, grants it expansive power to fashion a system to

14

> compensate employees for work-related injuries or disease.

*Antonucci v. Workers' Comp. Appeal Bd. (U.S. Steel Corp.)*, 576 A.2d 401, 404 (Pa. Cmwlth. 1990). Added to our Constitution in 1915 to enable our workers' compensation laws, Article III, Section 18 has traditionally been the subject of litigation over the reasonability of amounts or rates of compensation received by a claimant. *See Keystone Trucking Corp. v. Workmen's Comp. Appeal Bd.*, 397 A.2d 1256 (Pa. Cmwlth. 1979) (citing *Rich Hill Coal Co. v. Bashore*, 7 A.2d 302 (Pa. 1939); *Rudy v. McCloskey*, 30 A.2d 805 (Pa. Super. 1943)).

Here, however, in what appears to be an issue of first impression, Claimant argues that Act 111 violates Article III, Section 18's requirement that the General Assembly ensure "reasonable compensation" for injured workers. Claimant's Br. at 40. Claimant maintains that by restoring the IRE process, Act 111 allows employers to avoid the longstanding requirement to show that a claimant has regained some degree of earning power in order to be subject to modification to TPD and replaces it with an impairment rating not tied to earning power. Claimant's Br. at 38-47. Because a claimant who may have no earning power due to his work-related injury may nevertheless be placed in TPD status and have his benefits duration limited to 604 weeks (104 weeks of TTD benefits followed by 500 weeks of TPD benefits), Claimant asserts that Act 111 does not provide for "reasonable compensation" as required by Article III, Section 18. Claimant's Br. at 38-47.

Employer responds that Article III, Section 18 is not a limitation on the General Assembly, but rather a broad grant of authority to legislate workers' compensation, which includes placing reasonable limits on how much and for how long a claimant may receive benefits. Employer's Br. at 20-22. Employer reasons that although modification from TTD to TPD status traditionally required an

15

employer to show that a claimant regained earning power, it has never been declared to be the sole or only reasonable method of modification. *Id*. at 22-23. Employer adds that the General Assembly has previously created benefits not based on earning power, such as those for specific loss of a body part and death benefits to family members, so it can also restore the IRE via Act 111. *Id.*

Although the former IRE provision has been replaced by Act 111, the basic language setting forth the mechanism of modification from TTD to TPD status based on an impairment rating rather than a showing by the employer of the claimant's resumed earning power has not changed. *Compare* 77 P.S. § 511.3 *with former* 77 P.S. § 511.2 (repealed 2018). We note also that the former IRE provisions were stricken by our Supreme Court in *Protz II* because they violated nondelegation principles, not because they were unreasonable. For purposes of this issue, therefore, we find cases considering the former IRE provision to be applicable.

While the former provisions were in effect, this Court treated modification to TPD status based on an IRE as distinct from and additional to, but not a replacement of the traditional method of status modification based on a showing of resumed earning power. *See Sign Innovation v. Workers' Comp. Appeal Bd. (Ayers)*, 937 A.2d 623, 627-29 & n.7 (Pa. Cmwlth. 2007) (observing that the "[c]laimant's theory mixes apples and oranges, *i.e.*, a body impairment and actual ability to work"). In *Diehl v. Workers' Compensation Appeal Board (IA Construction)*, 972 A.2d 100 (Pa. Cmwlth. 2009), we stated that the former IRE provision allowed for modification under either an earning power or IRE mechanism and that "[a]n employer is free to prove one or the other. However, the employer need not prove both earning power and level of impairment to effect a change in the claimant's disability status." *Id*. at 107. In *Whitfield v. Workers' Compensation*

16

*Appeal Board (Tenet Health System Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018), which this Court issued several months before Act 111 became effective, we noted that while "disability" in workers' compensation is generally synonymous with lost earning power, it can also refer to the claimant's benefit status (either TTD or TPD) and that the former IRE provision allowed for a change in status with or without evidence of a resumption of earning power. *Id*. at 612-14.

In finding that the IRE process could stand alone as a method of modifying a claimant's benefit status and that evidence of resumed earning power in the traditional manner was not required for that modification, these decisions indicated that the IRE process itself was not unreasonable. In *Hilyer v. Workers' Compensation Appeal Board (Joseph T. Patrill, Jr. Logging)*, 847 A.2d 232 (Pa. Cmwlth. 2004), we explained that when IREs were introduced in 1996, they were part of a reform effort "intended to reduce rising Workers' Compensation costs and restore efficiency to the Workers' Compensation system." *Id*. at 235.

Our workers' compensation laws are remedial and salutary, and therefore subject to liberal interpretation in favor of the claimant. *City of Phila. v. Workers' Comp. Appeal Bd. (Williams)*, 851 A.2d 838, 843 (Pa. 2004). However, these laws also balance "the competing interests of employers and employees." *Dep't of Lab. & Indus., Bur. of Workers' Comp. v. Workers' Comp. Appeal Bd. (Excelsior Ins.)*, 58 A.3d 18, 27 (Pa. 2012). We have found that the General Assembly engaged in similar balancing when drafting Act 111 to credit employers for past weeks of TTD or TPD, while making other changes favorable to claimants:

> Accordingly, Section 3 of Act 111 does not evidence clear legislative intent that the entirety of Act 111 should be given retroactive effect. Instead, it appears the General Assembly intended that employers and insurers that relied

17

upon former Section 306(a.2) to their detriment by not pursuing other methods of a modification[19] should not bear the entire burden of the provision being declared unconstitutional. Through the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid. However, for the benefit of claimants, the General Assembly also specifically reduced the impairment rating necessary for a claimant's status to be changed from 49% or lower to 34% or lower, making it more difficult for employers to change total disability status to partial disability status. That the General Assembly used specific language to give retroactive effect to these carefully selected individual provisions does not make the entirety of Act 111 retroactive as the amendment lacks clear language to that effect.

> [19] IREs are generally viewed as a more cost-efficient method of modifying a claimant's benefits compared to alternatives.

*Rose Corp.*, 238 A.3d at 562 & n.19 (stating that an IRE performed prior to the enactment of Act 111 may not be the basis of a modification because the provision restoring the IRE process does not use retroactive language as does the provision granting employers credit for past weeks of paid benefits).

As the foregoing cases illustrate, this Court has not found IREs to be inherently unreasonable as an alternate means for employers to modify a claimant's status from TTD to TPD. Additionally, we have previously rejected arguments that IREs are inherently unreasonable because they do not depend on a showing by an employer of a claimant's resumed earning power. *See Whitfield*, 188 A.3d at 613-14; *Diehl*, 972 A.2d at 107. We therefore conclude that Act 111's restoration of the IRE process does not violate the "reasonable compensation" aspect of Article III, Section 18 of the Pennsylvania Constitution.

18

### III. Conclusion

Claimant has failed to show that Act 111's provisions allowing employers to credit previously paid benefits weeks violate either due process or due course of law principles. Claimant has also failed to show that by reenacting the IRE process, Act 111 violates Article III, Section 18 of the Pennsylvania Constitution. The Board's order is therefore affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela DiPaolo,                     :
                    Petitioner      :
                                    :
        v.                          :
                                    :
UPMC Magee Women's Hospital         :
(Workers' Compensation Appeal       :
Board),                             :        No. 878 C.D. 2021
                    Respondent      :

## O R D E R

AND NOW, this 13th day of June, 2022, the order of the Workers' Compensation Appeal Board dated July 1, 2021, is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge